WILLIAM H. DANGERFIELD AND OTHERS V. GEORGE W. PASCHAL
AND OTHERS.

If the plea of *res judicata* is a bar to this second action (to try title to land) it is unnecessary to look further, to determine whether or not the Court erred in overruling the motion for a continuance, (to obtain testimony to prove title anterior to the former judgment.)

An action to recover land claimed by the plaintiff and defendant under different titles emanating from the Government, having no connection except that of location, is to all intents and purposes an action of trespass to try title, within the meaning of the Act of 1840 to provide the mode of trying titles to land, which allows the plaintiff a second action within a year; and it makes no difference that the plaintiff, who claimed under the elder title, alleged that the defendant had notice of plaintiff's elder title, and made his location and obtained his patent fraudulently, with a view to appropriate to himself the property of the plaintiff, and prayed a cancellation of defendant's field-notes and patent, on the ground that they cast a cloud upon the plaintiff's title.

The omission to indorse on the petition, that the action was brought to try the title, as directed in the statute, cannot control the nature of the suit, when it necessarily involved the plaintiff's title; and if its character and object could have been mistaken, by which the defendants were about to be misled in their defences, they should have excepted to the petition, on that ground.

Where the plaintiffs sued, alleging an elder title in themselves, and that the defendants claimed the land under subsequent locations and patents, fraudulently obtained with a full knowledge of plaintiff's prior title; and prayed that their title be quieted and the defendants' field-notes and patents, which constituted a cloud upon the title, be cancelled; and the defendants set up their title in their answer, and prayed that they be quieted therein; and when the cause came on for trial, the defendants demurred to plaintiffs' evidence of title, and the jury was discharged and the cause submitted to the Court on the said demurrer to evidence, whereupon it was considered by the Court that the demurrer of defendants be sustained, and that plaintiffs take nothing by their suit, but that the defendants recover their costs in this behalf expended; it was held that said judgment was not a bar to a second suit by the plaintiff brought within a year from the affirmance of said judgment on appeal.[*]

---

[*] It has not yet been decided, where the defendant in an action of trespass to try title, sets up his title to the land in reconvention, and obtains a judgment thereon in his favor, that the plaintiff can bring a second action. It will be observed that the judgment in the first suit in this case, did not establish the defendant's title in reconvention, but merely negatived the plaintiff's title, as if there had been merely a plea of not guilty or a general denial.—REPS.

Dangerfield v. Paschal.

Where it is apparent from the record, that the Court refused a continuance on grounds which went to the merits of the cause, as disclosed by the pleadings, and not to the diligence of the party in preparation for trial, such refusal will be revised without the weight of the presumption in its favor, which a direct decision upon the motion, irrespective of the plea, would have imposed.

Suit in Bexar, Oct. 25th, 1854; March 3d, 1855, answer of several defendants filed; March 5th, rule for costs against plaintiff, by the Clerk; 19th, venue ordered to be changed to Hays at instance of defendants; April 7th, rule for costs satisfied by defendants; 14th, proceedings in Bexar certified, and filed by defendants in Hays on first day of the Spring Term, which was between the 14th and 17th of April; April 17th, answer of the other defendants filed in Hays; 18th, cause called for trial, and plaintiffs' attorney made an affidavit for a continuance on the ground of the absence of material witnesses who resided in Bexar; held, in the absence of the presumption which ordinarily obtains in favor of the judgment of the Court below, in such cases, that the continuance ought to have been granted. It did not appear that the defendants were cited.

Witnesses who have been subpœnaed to attend in the county where suit is brought, are not bound, without more, to follow the case to another county to which the venue is changed.

Ever since the organization of our Courts, up to the time of the intimation in Champion v. Angier, 16 Tex. R. 93, it had been the practice, as it is believed, recognized in all the Courts, to regard the overruling of an application for continuance, filed and entered of record, as apparent upon the record, for the purpose of revision by this Court.

The intimation, thus given in that case, (Champion v. Angier, 16 Tex. R. 93,) will, we trust, induce the Bar and the Courts to adopt that (a bill of exceptions) as the correct practice upon the subject.

A practice, thus long and well established, should not be suddenly changed, to the prejudice of the rights of parties litigant.

Appeal from Hays. Tried below before the Hon. John Hancock.

The petition in the former suit, the judgment in which was pleaded by defendants (appellees) in bar of this, set out the title of the plaintiffs, Dangerfield and others, emanating from the Spanish Government; alleged that the defendants had made locations and surveys thereon, upon one of which they had obtained a patent; that defendants had notice of plaintiffs' title, and made said locations and procured said patents fraudulently, with the intention of appropriating to themselves the property of the plaintiffs; "complainant Dangerfield alleges that said Evans has made a possession on the part of said land which belongs to him, and that he has destroyed much valuable timber and wood,

for which he prays an account and decree;" that certain persons who had an interest in common with complainants refused to join in the suit, and prayer that they therefore be made defendants. " Complainants charge that said locations and surveys of defendants constitute a cloud over complainants' title to their property, and injure the value of their said property and prevent its sale. They therefore pray that they, Paschal and Evans, be decreed to deliver up their field-notes and patent to be cancelled and annulled, and that they remove their locations off said land;" prayer also for a writ of injunction to restrain defendants from making or causing to be made any further surveys, or procuring any further patent for the same until the final determination of this suit; prayer also for injunction to restrain defendants from cutting timber, and for general relief. No clause or indorsement to the effect that the suit was brought as well to try title as for damages.

The answer of defendants in said former suit was entitled of the cause, as of a bill of Chancery; denied the particulars of plaintiffs' allegations of their title; set up their own locations, surveys and patent, by virtue of genuine land certificates, and prayed that they be quieted in their title to the lands embraced therein, the field-notes of which were fully set forth.

The judgment in said former suit, which was rendered on the 8th Nov. 1852, was to the effect that the parties appeared, a jury was called, and after hearing the evidence in behalf of petitioners, with admissions and evidence in the pleadings set forth, the same was demurred to by defendants, and the jury were discharged, and the cause thereupon submitted to the Court on said demurrer to evidence, and being heard and duly considered, because it seems to the Court, that the evidence for petitioners has failed and is insufficient in law to sustain the allegations, it is therefore considered and adjudged by the Court, that the demurrer of defendants be sustained, and that plaintiffs take nothing by their suit, but that the defendants recover their costs in this behalf expended. Said judgment was affirmed on appeal; the report will be found in 11 Tex. R. 579.

A new suit was commenced by plaintiffs by similar petition filed on the 28th July, 1854; but the petition was withdrawn on the 31st of the same month, before any further proceedings were had.

A new suit, which is the present suit, was again commenced by the plaintiffs in Bexar county, on the 25th of Oct. 1854. The

petition merely described the land, alleged title in the plaintiffs in general terms, and trespasses by the defendants, and prayed for damages, a confirmation of plaintiffs' title and a writ of possession. The petition was not indorsed to the effect that it was brought as well to try the title as for damages. It was entitled to Spring Term, 1855.

The defendants pleaded in bar the judgment in the first suit, which they alleged was affirmed on appeal to the Supreme Court, at November Term, 1853.

"And the defendants specially here deny, that said final judgment here pleaded in law, was rendered in an action of trespass to try title under the statute allowing a second action to be brought within one year, but that said judgment was rendered in a cause brought in the nature of a bill in Chancery, in which the plaintiffs alleged no trespass, and claimed no damages, and which proceeding was in the nature of a writ of right, for the final trial and adjudication of the titles of the respective parties, and wherefor no second action is allowed; wherefore they pray to be dismissed with costs."

The defendants also pleaded that on 28th July, 1854, the same plaintiffs commenced a second action against the same defendants, and which cause was afterwards dismissed by the plaintiffs in the same suit; and it was denied that the plaintiffs could bring a third action if a second could be brought. They also pleaded that the costs in the second action were not paid before the commencement of the third suit.

The defendants also pleaded a general denial; their own titles; and prayed for judgment quieting their titles.

The answer of all the defendants but two was filed on the 3d of March, 1855. On the 5th of same month, the Clerk had a rule for security for costs entered against the plaintiffs. On the 19th, the venue was ordered to be charged to Hays county, on motion of defendants' attorney, on the ground that Judge Devine was interested. On the 7th of April, 1855, defendants satisfied the Clerk's rule on the plaintiffs for security for costs, by giving bond. On the 14th of same month the proceedings in Bexar were certified by the Clerk; it did not appear when they were filed in Hays, but it was admitted by appellees that the statement in the affidavit for a continuance that it was filed on the first day of the Term was true. On the 17th of same month the answer of the two defendants who had not answered in Bexar, was filed in Hays. On the 18th of same month, the cause being

called for trial in Hays, plaintiffs moved to continue, as appeared by the entry of that date, "motion for continuance made and filed 18th April, 1855, motion overruled." In the transcript was also an affidavit for a continuance, a copy of which is given in the Opinion. Same day came the parties by their attorneys, and neither party requiring a jury, the case was submitted to the Court upon the pleadings of the parties, and the evidence in the cause, and the Court proceeding to adjudge upon the pleas of former adjudication, and the evidence in support thereof, does find the same for the defendant. It is therefore ordered, adjudged and decreed by the Court here, that the plaintiffs take nothing by their suit, and the defendants recover of them their costs about this suit expended. It is further ordered, adjudged and decreed that the defendants be quieted in their title to, and possession of, the land covered by the locations, surveys and patents, of the said Paschal, which are situated within the boundaries set forth in the plaintiffs' petition. It is further ordered, that the defendants recover of the plaintiffs all their costs in and about their cross-action or plea in reconvention herein expended.

There was a statement of facts, to the effect that the plaintiffs proved nothing and closed; the defendants read the two transcripts of the two preceding suits, and offered to read the proofs mentioned in the bill of exceptions taken in this cause; and this was all the evidence in the case.

The bill of exceptions was to the effect, that defendants offered certain evidence to establish their title to the land claimed in their answers, but the Court excluded it, because the Court thought the pleas of *res judicata* sufficiently sustained, to allow the relief asked by defendants.

This appeal being taken to Austin, 1855, was transferred to Galveston, 1856, where the following opinion was delivered by the late Mr. Justice Lipscomb :—

LIPSCOMB, J. There was a former suit between the same parties for the same land—the subject matter of this suit—in the nature of equitable proceedings, in which the plaintiffs allege that the defendants have set up a claim to the land in question by virtue of locations and patents; that the plaintiffs are the legal and *bona fide* owners of the said land; that the locations so made by the defendants, and the claim of title, under the same,

Dangerfield v. Paschal.

form a cloud on the plaintiffs' title; that the defendants have committed trespass upon the said land by cutting down and carrying away timber; they pray that, by a decree of the Court, the cloud upon their title may be removed; that defendants' location and patents be vacated; that title to said land be decreed to be in the plaintiffs; that an account be taken of the damages committed by said trespass, and defendants be decreed to pay the same to the plaintiffs, and that defendants be enjoined from committing further trespass on the said land. The defendants answered, denying the plaintiffs' right or title to the land and claiming the same under and by virtue of locations of valid land certificates, on the said land, on some of which certificates patents had been issued to the defendants. On trial of that suit, judgment was given for the defendants; and on appeal, the judgment was affirmed. The plaintiffs then brought another suit for the same land, and dismissed it and brought this suit. The defendants pleaded the former judgment, which plea was sustained and the plaintiffs appealed.

The appellants claim a reversal of the judgment in this case, under the 7th Section of "An Act to provide the mode for trying titles to land." It is as follows: "That in all actions of trespass to try titles to land, commenced within the time limited by law, the plaintiff shall proceed with all convenient expedition to the trial of the same, and in case a verdict and judgment shall pass against him in such action; such verdict and judgment shall not be conclusive and definite against the plaintiff, but at any time within one year the said plaintiff or any other person claiming under him, shall have a right to commence his action for the recovery of the said lands *de novo*, and prosecute the same," &c. &c. (Hart. Dig. Art. 3226.)

The majority of the Court believe, that under the law cited the plaintiffs had a right to two trials on the merits, and that the fact of the first suit not being brought under the statute, will not abridge that right; that the suit that had been brought and dismissed after the first was decided, interposes no bar to this suit, because it was not tried upon its merits, and this suit was brought within twelve months after the decision of the first. The Section of the statute before cited seems to require, that the second suit should be tried on the merits of the title, to constitute a bar to another action. In continuation of the part of the Section recited, it is as follows: *i. e.* "But in case a verdict and judgment again pass against such plaintiff, then such second

verdict and judgment shall be finally conclusive on the part of every such plaintiff, and he shall be forever barred and excluded from any further action or suit for the recovery of the same land."

The second suit was not tried nor prosecuted to verdict and judgment. The conclusion is, therefore, that the Court below erred in sustaining the plea of former recovery.

I am constrained to dissent from the opinion of the majority. The statute already referred to provides a particular mode of trying title to land; designates it as "trespass;" it requires a particular indorsement upon the petition, "that it is to recover damages as well as to try title;" it abolishes all fictions of an action of ejectment; these provisions precede, but are part of the same legislative act of which the seventh Section, reserving the right of two trials to the plaintiff, constituted also a part, and certainly forms an exception to the general mode of bringing suits under the system in force in this State. I therefore conclude that suits brought under it, must be tried by its provisions, and that its requisitions and rights must be limited to suits brought in accordance with it. If the first suit is not in conformity therewith, such suit cannot invoke any of the rights reserved by it. This first suit was not pretended to be under the statute, and I can see no reason why all the legal consequences of a former trial should not attach to the judgment in that suit. Under the fictions of the action of ejectment, these consequences were avoided, and the wholesome rule of law that no one should be twice vexed for the same cause of action, defeated. The plaintiff in ejectment, by making a new demise, could go on *ad libitum*, in bringing suit after suit, until restrained by the Chancellor's writ of injunction from further harassing the defendant. This was a trifling mockery of the dignity of judicial proceedings. But for such fictions, one judgment would have been conclusive; these fictions find no place in our practice; and but for the statute referred to, it would not be questioned that one trial on the merits would be conclusive on the rights of the plaintiff. And, in my opinion, where the plaintiff chooses not to bring his suit under the statute, he cannot resort to it for any purpose, and he is concluded by the judgment on the merits in the suit he has chosen to bring. In the first suit, the merits of his title were tried and declared against him; and I can see no reason of policy or sound rule of law, that will exempt him from the well known legal consequences of "*res judicata*." But in

accordance with the opinion of a majority of the Court, the judgment is reversed and the case remanded to the Court below for a new trial.

A re-hearing was granted at Tyler, 1856; and the following argument and final disposition of the cause was made at Austin, 1857:—

*Denison* and *West*, for appellants. I. The first thirteen pages of appellees' brief is taken up with endeavoring to establish the position that the refusal of the continuance will not be revised because there is no bill of exceptions. It is evident, however, from the record, that the Court decided the whole case, continuance included, upon the plea of former judgment. The same Judge had tried the former suit; and being familiar with all the facts, put the cause at once upon what he regarded as its turning point.

II. Our next proposition is one to which we invite the attention of the Court, as the one on which the whole case hinges. It is as follows: That under our system of practice, a party bringing a suit in which the object is the trial of the strength of the title, whether it is brought in the nature of a bill to quiet title, remove clouds from title and to account for damages, or whether an action of trespass to try title is brought; in each case, under our practice, the plaintiff is as much authorized in bringing a second suit as he would be had he followed all the requirements of the statute.

The questions in this case are in nowise similar to those in the case of Fisk v. Miller and Wife.

It is idle to discuss or connect the two cases, as the appellee has attempted in his brief.

The fallacy of the whole argument of the appellee consists in his entirely forgetting that there is no distinction in our practice between suits at law and suits in equity; no difference between a legal and an equitable title to land.

The first suit instituted was to remove clouds from title, and for an injunction to prevent the cutting of timber and to quiet them in their possession. By the answer of the defendants, setting up their title, and locations and patents, the suit became one entirely and solely as to the strength of the two titles. There was no allegation of fraud, forgery, or of vexatious litigation,

multiplicity of suits, or any other ground whatever of equity jurisdiction shown. Every right of the parties, both plaintiff and defendant, could have been tried and determined at law. And the equity power of the Court was exhausted, and a Chancellor at this stage of the pleadings would have stopped the proceedings and left them to their legal remedies, (2 Sellon, Prac. 144; Adams' Equity, 375, 376, last edition; Adams on Eject. 351, 352.) The title to land, the legal rights of parties to realty, the strength of two titles to land, never is tried or tested in a Court of Equity, unless fraud, mistake, accident, or some other ground of equitable jurisdiction is alleged. But no bill of peace was ever entertained by a Chancellor, no injunction to stay proceedings at law, no bill to quiet title was ever entertained by a Chancellor, until first the title had been settled in law; and if the title to land, settled more than once. (Story, Eq. Jur. Sec. 852, 860, 873, 988, 1478, 1479; 3 Halst. Ch. 440; Mitford, Eq. Pl. 143, 145, 148; 2 Johns. Ch. 281; 10 Geo. R. 395; Adams' Equity, 464, 465, last edition.)

"But," says Sergeant Sellon, in his Prac. 2 vol. p. 144, "where the suit begins in chancery for relief touching pretended incumbrances on the title to lands, and the Court has ordered the defendant to pursue an ejectment at law, there after one or two ejectments tried and the right settled to the satisfaction of the Court, the Court hath ordered a perpetual injunction against the defendant, because there the suit first attached in that Court, and never began at law, and such precedent incumbrances appearing to be fraudulent and inequitable against the possession, it is within the compass of the Court to relieve it." (Tillinghast Adams, 351, 352.)

So that in fact, in the case at bar, as there was no fraud, or other ground of equitable jurisdiction alleged, upon the pleadings of defendant the suit became one solely of trespass to try title, for had not the Court been clothed with blended jurisdiction, its order would have been either that an issue be made up and tried at law, or that the plaintiff be enjoined from further prosecuting his suit in equity until the defendant could assert his title at law.

Under our statute, nothing more was necessary to make it the statutory action of trespass to try title than an indorsement on the back of the petition that the suit was brought as well to try title as for damages, because no actual trespass need be proved at all. (Hart. Dig. Art. 3225.) And it has been held, that if there is no indorsement on the petition as required by statute, it

must be taken advantage of *in limine,* by demurrer or exception, and cannot be after a plea to the merits.

It is believed that the right of the appellants to their second suit can be maintained on still higher ground. It has never been the policy of any government to have the title to land disposed of in a summary manner.

In the great case of Morgan's heirs v. Patton et al., cited in appellee's brief, the jurisdiction of chancery was exercised in determining a question of fraud in the execution of a deed; a matter that a Court of Law could not reach at all. It was held, and nothing more, that the judgment of a Court of Equity, pronouncing the deed null and void and fraudulent, was conclusive in a Court of Law. Nothing more was decided.

The law is jealous of the title to realty. Real estate is more desired by man than any other species of property; and the policy of all laws require that the title should be divested only in the most solemn manner. At Common Law, ejectment after ejectment might be brought, as we have seen. In almost all the States of the Union; in Arkansas, Michigan, Pennsylvania, South Carolina and other States, a mode is provided by statute, by which a new trial may be had, and these are all of them. in some respects similar to our statute. Hence we conclude that, on general principles, the appellant would be entitled to two actions.

III. As to the suit in July, 1854, the appellee has repeatedly stated in his brief that it was dismissed without costs being paid. No such fact is disclosed by the record anywhere, and the presumption was and is that the costs are paid.

The appellee has frequently stated in his brief that the present petition was not indorsed as required by statute. This, if true, should have been objected to *in limine.*

By the authority from Adams' Equity, cited *supra,* it is contended that the original suit was not a good bill in equity, and if good for any purpose, was only good as an action of trespass to try title; it alleged a trespass, and damage, and prayed for general relief, and, under this prayer, the Court could have granted a writ of possession. It was in all respects a compliance with the statute, except the indorsement, and that was not objected to. (Burnley v. Cook, 13 Tex. R.; Bone v. Walters, 14 Id.; Shannon v. Taylor, 16 Id.)

*Paschals & Stribling,* for appellees, cited the decisions of this
35

Court on the subject of continuances, and argued that it did not appear from the Reports, that the practice of revising a refusal to grant a continuance, without a bill of exceptions, had ever been recognized by this Court; referred generally to unpublished, recent decisions to the effect that a bill of exceptions is required in such cases; cited numerous decisions in other States; and concluded with the declaration, that after a most thorough review of all the authorities to be found in the libraries upon the subject, they had been unable to find a single case where the overruling of a motion to continue a cause had been considered, except upon bill of exceptions overruling the motion; and that they might venture to say, upon principle, that none could be found, since the affidavit is no more a part of the record, than any other affidavit made for any other purpose, which is not the foundation of a pleading.

II. That the affidavit was insufficient; that it showed no diligence; that the suit had been brought in Bexar sufficiently long to require the summoning of witnesses; that none were summoned by plaintiffs; that plaintiffs could not know that the Judge of that District would excuse himself, or the defendants refuse to agree upon a special Judge; that had the witnesses been subpœnaed to attend the Court at Bexar, the presumption is they would have followed the cause; that a witness when once regularly subpœnaed is bound to attend until he is sworn or discharged; that the showing for a continuance not being under the statute, was submitted to the discretion of the Court below; (Borden v. Houston, 2 Tex. R. 594;) and admitting the power of this Court to revise that discretion, it certainly would not do so unless it was evident that justice had not been done.

III. That it was not a proper case for an attorney to make an affidavit for continuance; that the affidavit might be true and yet the witnesses have been kept away by the procurement of the plaintiffs. (Robinson v. Martel, 11 Tex. R. 153; Spencer v. Kinnard, 12 Id. 180.) It does not state that the attorney knew of no other witnesses by whom he could prove the same facts, nor that such witnesses were not present.

IV. Should the Court, however, hold that the application for a continuance is properly before it, and that it was error to overrule it, then, before the case can be remanded for a new trial, it will be necessary to consider the plea, and the facts under the plea of *res judicata*.

We maintain that the first action not having been the action

of "trespass to try title and for damages" prescribed by the statute; but an action in the nature of a writ of right against parties not in possession, in which the plaintiffs set up a title from the Government, and sought the cancellation of the patents, &c., of the defendants, because they constituted a cloud upon the title or ancient grant of the plaintiffs; and the defendant having put in issue the validity of the grant; denied the possession; plead the validity of their own patents; and the cause having gone to the jury, from which it was withdrawn by a demurrer to the evidence, which was sustained; and that decision having been affirmed by this Court, the judgment was final and conclusive between the parties. That this was always the law in Texas before the statute about trespass to try title, there can be no doubt.

The Common Law Act, the trespass to try title Act and the Act maintaining in force the system of pleading as it aforetime was, all went into operation the same day. (Acts of 1840, pp. 3, 88 and 136; Hart. Dig. Art. 3220, 127.) Therefore the Common Law fictions of ejectment never have been in force in Texas. And upon the fiction alone of the real parties not being before the Court, rested the right of either party in ejectment, or both, to maintain a second action. (Adams on Ejectment, Chap. 1, and Adams and Waterman's Notes; Runnington on Ejectment, p. 1 to 12.)

But it is said that the right is not claimed upon the fiction; but that in all real actions, the plaintiff if defeated has, as a matter of law, the right to maintain a second action. The statute admits of no such construction. The reasons for this belief were sufficiently discussed by the writer in the cases of Fisk against Miller and Wife, at this Term.

The Act provides a mode for trying titles to lands. Not that a mode, and a very logical and sensible one, had not always existed; not that it was necessary to abolish the fictitious proceedings, for they had never existed; but it was only intended to adopt a rule in which by general pleading and notice, the strength of title might be put in issue. The remedy prescribed was to enable the plaintiff, by averring his ownership (lease, entry and ouster,) and damages; and by indorsing the object of the suit upon the petition, to put in issue the strength of titles, to be tried "on their merits conformably to the principles of trial by ejectment." What principles? Not the fictions or the fictitious judgment. But the principles that the plaintiff must recover upon the strength of his own title, and not upon the weakness of the

defendant's; that he must show a superior, legal or equitable, to the defendant's title, or to an outstanding title in a stranger; or a superior right to recover the possession; that the defendant may call in his warrantor to vouch; that the ordinary Common Law rules of evidence prevailed, unless modified by statute. These are the principles to which all the statutory actions conform. (Waterman's Notes on Adams' Ejectment, Chap. 1; Runnington on Ejectment, p. 15.)

But the non-conformity commences with the declaration; the real parties, and not men of straw being upon the record; the real cause of action; the mesne profits; the recovery of antecedent damages for trespass, and for use and occupation in certain cases; the right of defendant to *recoup* improvements, without resorting to chancery; the special defences of time prescribed by our statute. These were things in which there is no conformity to the fictitious action of ejectment. (Hart. Dig. Art. 3220 to 3223.)

The amendment to the Act of 5th February, 1840, passed 2d February, 1844, (Dig. Art. 3223 and 3235,) shows not only the necessity of indorsement, but the Common Law effect of the plea of not guilty. The ejectment is a real, the damages a personal action. (Runnington on Ejectment, p. 1.)

Now, it cannot be doubted, that the plaintiff need not accumulate all these remedies. For example, he may sue for trespass *quare clausun fregit*, or for use and occupation, without putting in issue his title. And the right to recover might depend alone upon the right of possession. Or the defendant being in possession, may sue to cancel an outstanding adverse title; a forged, a fraudulent deed, or deed executed while laboring under disability; for specific performance; for partition; or for slander of title; and who doubts but that the judgments between the parties would be as conclusive as in a personal or mixed action, or action for an incorporeal hereditament?

The Section of the statute (Sec. 7) which gives a second action, in terms, limits it to "actions of trespass to try titles to lands, commenced within the time limited by law," (that is not barred.) In which the "plaintiff shall proceed with all convenient expedition to the trial"—(not continued for frivolous causes, and through many years;) "and in case a verdict and judgment shall pass against him in such action," (that is the action contemplated by the first, second, fourth and fifth Sections of the Act,) "such verdict and judgment shall not be conclusive or definite against

the plaintiff" (that is, a judgment obtained in the form of an action, and for the recovery of the property, prescribed by the statute,) "but at any time within one year the plaintiff, or any other person claiming under him, shall have the right to commence his action for the recovery of said lands *de novo*, and prosecute the same in the manner, and with the expedition before directed; but in case a verdict and judgment shall pass against the plaintiff, then such second verdict and judgment shall be finally conclusive on the part of the plaintiff, and he shall be forever barred and concluded from any further action or suit for the recovery of the same lands, and the right of the defendant shall be thenceforth finally settled against such plaintiff, his heirs or assigns," &c.

Now it cannot be denied that, but for this Section, the first judgment would have precisely the force which the statute gives to the second. And it follows as a corollary, that in every real action except in the form and mode prescribed by the statute, the judgment has precisely this conclusive effect.

This follows upon the general principle, that the inclusion of the things enumerated excludes the things not enumerated. And it is maintained by the construction given to all similar statutes. In the States of Missouri, Arkansas and Pennsylvania, similar acts are construed to cause final judgments. And in New York the new trial is given, not by an original proceeding, but by a motion for a new trial within the prescribed time. See Adams on Ejectment by Waterman, (pages cited in the brief of appellees in Fisk v. Miller and Wife, still pending.) The principle is that the theory being changed, the principle is changed. *Ratione cessante quoque lex cessat.*

Will any one say that if issues are made up involving the question of improvements; of use and occupation, of damages and reconvention of damages; and a judgment be rendered in favor of the plaintiff for the land, and of the defendant for improvements; of the plaintiff for use and occupation, and of the defendant for reconvened damages; that in a second action all these questions would be re-opened? Such has not been the construction given to judgments where the fictitious action exists. On the contrary whenever in this action a question of legitimacy, of forgery, of fraud, of the validity of adverse deeds, &c. &c., has been determined, the judgment upon that issue is as conclusive as in any other form of action. (Adams v. Barnes, 17 Mass.

R. 365; Trevivian v. Lawrence, 1 Salkeld, 276; 3 Salk. 151; S. C. Co. Lit. 227.)

Again, in actions for the recovery of mesne profits, the record of the recovery in the ejectment suit is conclusive evidence for the plaintiff against the defendant, or any person deriving possession from him. Such was the doctrine held as against one to whom the defendant in ejectment had transferred the possession, during the pendency of the ejectment suit. (Jackson v. Stone, 13 Johns. 447; Jackson v. Hills, 8 Cowen, R. 290; Deiney v. Osborn, 4 Id. 329; Adams on Eject. 331.)

So in the great case of Morgan's Heirs v. Patton and others, 4 Mon. R. 453; the same plaintiffs first filed their bill on the chancery side of the Federal Court in Kentucky, alleging that the defendants had obtained deeds of the land, which they charged to be illegal and fraudulent for various causes of irregularity, illegality and fraud complained of. The defendants put the charges in issue; and various proofs were taken. Upon the hearing at the November Term, 1814, the bill was dismissed. The same plaintiffs then commenced an action of ejectment in the Circuit Court of Montgomery county. Under the general issue the defendants offered the decree in chancery as an estoppel. The Supreme Court of Kentucky held that it was such.

It is to be observed that in Kentucky, at that time, there was no limit to the number of actions of ejectment. (Speed v. Braxdell, 7 Mon. 573.) But the point was that the plaintiffs had sued, not for possession, but to cancel a Sheriff's deed for fraud, want of service in obtaining the judgment, &c. The right to cancel the title had been put in issue; and the complainants were defeated. The estoppel was held to be sufficient. This is precisely our case. Nor can it be said that our mixed jurisdiction varies the rule; the object of the suit is the question.

The object of the first suit, was. to prove the title and long possession of the plaintiffs, and the invalidity of the defendants' titles, and to recover damages for the cloud and injury to their title. But they did not seek to attain this object by an action of trespass to try title, but by a suit in equity. And now they seek the same object, not by an "action of trespass to try title" indorsed as such; but by a mere action of trespass and long continuances.

Viewed as a mere action of trespass, without the indorsement, and there is no doubt but that the previous judgment would be

an estoppel. And if both be regarded as equitable actions, the same results would follow. And if one be equity and the other law, we have seen that it operates as an estoppel. In a word, it all resolves itself into this: That if a party would have the benefit of the statute, he must follow the statute strictly. And if he follows any other remedy than the statute, then the judgment will operate as an estoppel.

But it is not necessary so to regard it in this case. It is enough that the plaintiffs instituted a second action against the defendants; and failed without any erroneous ruling against them, and without an effort to prove trespass or title. The seventh section of the act warranted the very judgment rendered. The former record need only to have been consulted, to have determined the character of the decree rendered.

Roberts, J. A rehearing having been granted, the case has again been considered.

If the plea of *res judicata* is a bar to this second action, it is unnecessary to look further, to determine whether or not the Court erred in overruling the motion for a continuance.

The former suit, the judgment in which is set up in bar of this, is of a mixed character; to establish plaintiffs' title as against a number of persons claiming title to the same land under adverse titles, and to quiet plaintiffs in the enjoyment of the same, free from litigation and harassment in relation to it. It is in the nature of a bill of peace, "which is brought by a person to establish and perpetuate a right which he claims, and which, from its nature, may be controverted by different persons, at different times, and by different actions." (2 Story, Eq. Jur. Sec. 853.) "Courts of Equity, having a power to bring all the parties before them, will at once proceed to the ascertainment of the right; and, if it be necessary, they will ascertain it by an action or issue at law, and then make a decree finally binding all the parties." (Id. Sec. 854.) The petition alleged right in the plaintiffs, and trespasses by defendants. It has been held by this Court, at an early day, that in an action of trespass to try title to land, several defendants might be joined in the same action by a plaintiff whose right was the same as against all the defendants.

The point of difference between this and an ordinary suit of trespass to try title was, that in this, plaintiffs sought to set aside the patents and conveyances of defendants, as having been made

and procured in fraud of their rights. This alleged fraud did not relate to any transactions between plaintiffs and defendants which rendered them fraudulent. Defendants' title had no connection with that of plaintiffs', except that of locality. Each party claimed under different titles emanating from the Government. If plaintiffs' title was good, and they obtained a judgment upon it against the defendants, that settled plaintiffs' right; for the time, at any rate. Whether this would entitle plaintiffs to enjoin defendants from hereafter suing on their title, would depend upon facts additional and cumulative to those necessary to the maintenance of plaintiffs' mere superior right to the land.

The superaddition of these facts, by which the plaintiffs sought this additional remedy, does not the less render it a suit to try the title; for the title of plaintiffs must be established as a prerequisite to the additional relief. If it be established, the plaintiffs would be entitled to a judgment to that effect, whether the additional facts alleged and proved entitled them to this additional relief or not.

The omission to indorse on the petition that the action was brought to try the title, as directed in the statute, cannot control the nature of the suit, when it necessarily involved the trial of the plaintiffs' title; and if its character and object could have been mistaken, by which the defendants were about to be misled in their defences, they should have excepted to the petition, on that ground. (Shannon v. Taylor, 16 Tex. R. 423.) The defences, putting in issue the title, show that the defendants were not misled in this regard.

We are of opinion, therefore, that the plea of *res judicata* was not a good defence to this action.

It will be seen by reference to the judgment, that although the Court seemed to have acted on this plea alone, the judgment goes further than its adjudication would authorize, by decreeing " that the defendants be quieted in their title to, and possession of, the land covered by the locations, surveys and patents of the said Paschal, which are situated within the boundaries set forth in the plaintiffs' petition." This part has reference to the pleas of defendants setting up title in themselves, the evidence in support of which was excluded as unnecessary to determine the case. This Court could reverse that part of the decree, as not being supported by the evidence, and still leave standing that portion of the judgment which is appropriate to the issue which was tried, to wit: that the "plaintiffs take nothing by their suit,"

&c. This the Court would do, if it were determined that the plea, which formed that issue, was a bar to the action. But having determined that it is not, does it follow that the judgment that the "plaintiffs take nothing by their suit" must be reversed? The plaintiffs offered no evidence in support of their title, and the defendants (or some of them) had pleaded not guilty, which put upon the plaintiffs the burthen of proof; and if the defendants had adduced no proof upon their plea of *res judicata*, or if their proof had been insufficient to maintain that plea, this same judgment, that "plaintiffs take nothing by their suit," must have been rendered, because the plaintiffs were bound to recover on the strength of their own title, and had offered no evidence in support of it.

This brings us to the consideration of whether or not the Court erred in disregarding or overruling the plaintiffs' motion for a continuance.

It is more than probable, from what appears of record, that the Court disregarded this motion for a continuance, and did not pass upon its intrinsic merits, because of the view taken of the immateriality of any evidence of witnesses, under the plea of *res judicata*. The motion stands, therefore, without the weight of the presumption against it, which a direct decision upon it, irrespective of the plea, would have imposed.

The petition was filed October 25th, 1854, and it does not appear when, if at all, process was served on defendants. The defendants (except Lee and Sutherland) filed their answer at the Spring Term of the Bexar Court, 3d March, 1855. Plaintiffs were ruled to give security for costs at the same Term. In this condition, and before two of the defendants had answered, the venue was changed to Hays county (the Judge being disqualified) at the instance of defendants, and the order for the change was made 19th of March, 1855. Plaintiffs not having given the bond for costs, and the time not having expired, in which the law allowed them to give it, the defendants gave the bond on the 7th day of April, 1855. The transcript was made out for a change of venue by the Clerk on 14th April, 1855. The papers were filed in Clerk's office of the District Court of Hays county on the first day of the Court, (as stated in appellees' brief,) which was the 17th or 18th of April, 1855. On the 17th day of April, 1855, Lee and Sutherland appeared and filed their answer, pleading, among other things, "Not guilty." And on the 18th day of April, 1855, plaintiffs, by their attorney, applied to the Court

for a continuance, which was refused, and the overruling the application was entered of record on the minutes. The application, being sworn to, reads as follows :—

"Comes the plaintiff by J. Pryor, one of the attorneys, and upon oath says that he cannot go safely to trial at this Term of the Court, for the want of the testimony of Antonio Menchaca and some five other witnesses, who are citizens of Bexar county and State of Texas ; that the testimony of said witnesses is altogether material to plaintiffs in this cause ; that the plaintiffs have been unable to have said witnesses present at this Term of the Court, because said case was only placed on the docket of this Court on the first day of this Term, and the distance being so great from San Antonio to this place, the time has been wholly insufficient to have said witnesses present at this Term of the Court ; that the plaintiffs expect to be able to have said witnesses present at the next Term of this Court; and that this application is not made for delay, but that justice may be done."

There can be no question about this showing for a first continuance, except as to the point relating to the excuse for not having the witnesses present at the Hays Court. If they had been subpœnaed to appear at Bexar Court, they would not have been bound to have followed the case to Hays county. After its removal to Hays county, there was not time to have them subpœnaed, or to take their depositions. Up to the time of its removal, some of the defendants had not answered, and the record does not even show that they had been served with process. Under the circumstances of the case, the showing for a continuance was most ample ; and so we must believe the Court below would have held, if it had been regarded as necessary to be decided upon its sufficiency.

It is contended that the overruling of this application for continuance, not being excepted to, and contained in a bill of exceptions, is not error apparent upon the record in such manner as that this Court can revise it.

The case of Champion v. Angier, (16 Tex. R. 93,) is relied on, as establishing this doctrine. It is said there that " the correct practice doubtless is, in no case to revise the judgment of the Court refusing a continuance, unless the party seeking a reversal on that ground has reserved the point by a bill of exceptions." And the reason given for it was : " When called upon to sign a bill of exceptions, the Court may state very satisfactory reasons, apparent to the Court there, which would not otherwise

Dangerfield v. Paschal.

be made to appear to this Court." In that case it was decided that the application was insufficient. The intimation thus given in that case will, we trust, induce the Bar and the Courts to adopt that as the correct practice upon the subject. That case was decided after this case was argued in this Court the first time.

But ever since the organization of our Courts, up to the time of this intimation, it had been the practice, as it is believed, recognized in all the Courts, to regard the overruling of an application for continuance filed and entered of record, as apparent upon the record, for the purpose of revision by this Court. That the plaintiffs so regarded it in this case is beyond question, for really they had but little else to rely on for a reversal, and must have considered their case lost as soon as their application was overruled; and so the Court below must have regarded it, for it had it entered upon the record that "Motion for continuance made and filed 18th April, 1855. Motion overruled."

A practice, thus long and well established, should not be suddenly changed, to the prejudice of the rights of parties litigant.

It is not seen that the reason and spirit of the rule could apply to this case. What is it that could be known to the Judge below, that would have varied the affidavit or controlled its effect? It could hardly be presumed that he knew that the witnesses were there, which would have been about the only answer to it, for no witnesses were produced by plaintiffs on the trial, and they lost their case without another effort after their motion for a continuance was overruled. It is not reasonable that they would have done so, had the witnesses been present.

We are of opinion that the Court erred in overruling the motion for a continuance, and in entering the decree quieting defendants' title.

The judgment is reversed, and cause remanded.

Reversed and remanded.