HENRY S. SYPERT v. McCOWEN'S EXECUTORS ET AL.

Ten years having elapsed since the confirmation by the county court of an administrator's sale of land belonging to an estate, without complaint during that period by any one interested in the estate, it might well be insisted that, in the absence of proof, either *pro* or *con*, a compliance by the purchaser with the terms of sale would be presumed as against a party not interested in the estate.

To pass a perfect legal title to land of an estate, sold by an administrator under order of the county court, a conveyance by the administrator, executed according to the statute, is necessary; but it seems that without a conveyance from the administrator a purchaser, upon complying with the terms of the sale as confirmed by the county court, would have in the land an equitable interest sufficient to maintain a suit against a stranger to the estate. (Paschal's Dig., Art. 1328.)

If a purchaser of land at an administrator's sale fail to comply with the terms of the sale, the administrator can and should re-advertise and re-sell the property, and for this purpose a new order of sale is not necessary; but in order to make the defaulting purchaser liable for the statutory damages and for any deficiency in the price obtained at the second sale, the administrator must re-advertise and sell within a reasonable time. (Paschal's Dig., Art., 1333, Note 499.)

When ten years had elapsed since an administrator's sale and its confirmation by the county court, and no re-sale was attempted by the administrator, nor any complaint heard from him, or from the heirs, creditors, or any one else interested in the estate, this court inclines strongly to the opinion that, in the absence of proof showing a conveyance by the administrator, or a compliance by the purchaser with the terms of sale, a jury would be warranted

in finding, as against a stranger to the estate claiming adversely to it, and to all claiming under it, that the purchaser did comply with the terms of the sale, and thereby acquire all the interest of the estate in the land. It was error, therefore, in such a case for the court below to instruct the jury to find for the defendant on account of the failure of the plaintiff, who claimed under the administrator's sale, to prove a conveyance by the administrator or a compliance by the purchaser with the terms of the sale.

But notwithstanding such error in the charge of the court below, inasmuch as it appears to this court, on inspection of the whole of the record, that the plaintiff's title is fatally defective, for the reason that the estate under which he claims had no title to the land in controversy, the judgment in favor of the defendant must be affirmed.

The custom of the country to give to a person who locates lands a "locative interest" as a compensation for his services cannot create a contract binding the owner of the certificate. To entitle the locator to such an interest in the land, a contract to that effect with the owner of the certificate must be shown. If the locator rendered the services simply at the request of the owner, or of another person with whom the owner had made such a locative contract, the locator might be entitled to pecuniary compensation, but he could not recover an interest in the land located.

APPEAL from Hill. The case was tried before Hon. JOHN GREGG, one of the district judges.

The material facts of this case are stated in the opinion.

No brief for the appellant furnished to the *Reporter*.

*M. D. Herring,* for the appellees.

SMITH, J.—It is made sufficiently to appear that Mrs. McCracken, by her agent, Jones, in 1843, entered into a valid contract with Moses Evans to locate, survey, and secure the patent to her head-right of one league and labor of land at the expense of Evans, he to receive one-half the league as compensation for his services and expenses in the premises.

The record shows that Thomas Sypert located the certificate, had it surveyed, and the field-notes recorded with the district surveyor in 1847, and paid his fees of office; that he died in 1848, and nothing more was done by him or his representatives to secure the patent.

In 1850, Jones, as the agent of his daughter, the said Mrs. McCracken, now Minck, applied for the field-notes at the office of the district surveyor, paid the surveying fees, and received them; that he and his daughter, with her husband, Charles Minck, conveyed the certificate and land to the defendant, McCowen, on the 30th day of September, 1850, for $750, the latter purchasing with notice of the contract with Evans; and he applied to the General Land Office and had the patent issued to him on the 18th day of December, 1850, as assignee.

The plaintiff, H. S. Sypert, as the administrator of Thomas Sypert, deceased, under order of the county court to sell the land on twelve months' credit, did sell it on the 10th day of October, 1850, to J. R. Harding, and reported the sale to court, and it was confirmed on the 28th day of November, 1850. J. R. Harding conveyed the premises to the plaintiff, the latter taking it in his own right; but there was no evidence that he, as administrator, had ever made a conveyance to Harding, or that the latter had ever complied with the terms of sale, or anything to show either had not complied, and upon this state of the case the court instructed the jury that, there being no evidence that the administrator ever made the conveyance to Harding, or that the latter ever paid Thomas Sypert's estate for the land, they must find for the defendants. A verdict and judgment were rendered for the defendants, and the plaintiff appeals.

The probate sale was confirmed on the 28th November, 1850. This suit was instituted in 1855, and cause tried in 1860, and up to that date no act appears on the part of the heirs, creditors, or the administrator disaffirming the sale and confirmation, and it might be well insisted that, after so great a length of time, under these circumstances, a compliance would be presumed as against persons who have no interest in the estate of Thomas Sypert, deceased. If the heirs, creditors, and the administrator are satisfied

with it, should strangers be heard to object? But it is contended that the right of the estate could only pass and vest in the purchaser, Harding, by the conveyance made in pursuance of the confirmation.

The law provides, that, "After any such decree of confirmation shall have been made, upon the purchaser complying with the terms of sale, the executor or administrator shall execute and deliver to him a conveyance of the property so sold, if it were either lands or slaves, reciting therein the decree confirming the sale, and ordering the conveyance to be made, which conveyance of lands or slaves shall vest the right and title the testator or intestate had in the purchaser, and shall be, *prima facie*, evidence that all the requisites of the law have been complied with in making the sale." [O. & W. Dig., Art. 780; Paschal's Dig., Art. 1327, Note 498.] When this provision of the law is complied with, then the perfect legal title passes and vests in the purchaser.

But we are of opinion that upon the compliance on the part of the purchaser, with the terms of sale confirmed, he would have an equitable interest in the premises purchased, without the conveyance having been made by the administrator, sufficient to maintain a suit as against a stranger to the estate.

When the sale is confirmed, it then becomes the duty of the purchaser to give note for the purchase-money and mortgage, if land be sold on time; but the administrator can waive that duty, and become personally responsible for the amount of the purchase-money on his bond. (O. & W. Dig., Art. 782; 19 Tex., 180; Paschal's Dig., Art. 1333, Note 499.)

When the purchaser fails to comply with the terms of the sale and is in default, the administrator has the right, and it is made his duty, (if he do not wish to assume the amount of the purchase-money to the estate as aforesaid,) to re-advertise and re-sell the property, and the first pur-

chaser will be responsible for five per cent. upon his bid and for the deficiency in price on the second sale. (O. & W. Dig., Art. 779; Paschal's Dig., Art. 1326, Note 497.) But, in order to make him responsible, it is made the duty of the administrator to re-advertise and sell within a reasonable time after the purchaser makes default; and this court has said that from January to October is not within a reasonable time. (Short v. Ramsey, 18 Tex., 397.) When the purchaser is in default, the administrator has the right to sell without another order from the county court. (Case above cited.)   Hence it will appear that it was within the power of the administrator of Thomas Sypert to disaffirm the sale to Harding; and if he had desired to do so, in order to rid himself from responsibility for the purchase-money, he should have done so as early as it was convenient after the default of Harding to comply with the terms of sale.

Up to the date of the trial of this cause, some ten years after the confirmation of the sale, no complaint is heard from the heirs, creditors, or the administrator of Thomas Sypert, deceased, that Harding had not complied with the terms of sale; no re-sale of the property is attempted; a complete silence appears upon the part of all interested in the estate for that long period, and perhaps would still have continued, but the silence was broken by the objections of the defendant in this cause, who claims the property in opposition to the estate and all claiming under it. We are strongly inclined to the opinion that these facts and circumstances were sufficient to warrant the jury in finding that the purchaser had complied with the terms of sale, and acquired all the interest of the estate of Thomas Sypert, deceased, in the land, and that the court below erred in its instructions to the jury on that point.

But, upon looking into the whole record, we are of opinion that the verdict of the jury and the judgment of the

court were in accordance with the evidence in the cause, and it will have to be affirmed.

It will be observed that the plaintiff claims through a contract made by Evans with Mrs. McCracken. The plaintiff avers this contract was assigned to him, or rather that he was substituted in place of Evans, and made the location and survey in compliance with that contract. We are unable to see what connection he ever had with the contract Evans made with her. It does not appear to be assigned or transferred to him, nor does it appear that she ever contracted with him in any way, or on any terms, to locate the land. It has been settled by this court that the locator could acquire no interest in the land simply by having located the certificate and having it surveyed. The custom of the country to give what is called a locative interest in the land to the person who locates it, as compensation for his services, cannot create or furnish the terms of a contract to bind the owner of the certificate; that would be making contracts for them, instead of expounding and enforcing contracts made by them. If Thomas Sypert located the land for Evans, or for Mrs. McCracken, at their request, he would have a right to recover what his services were reasonably worth, but certainly would not be entitled to any part of the land, without a contract made to that effect, verbal or written; and, as there is no evidence of any such contract made with Thomas Sypert, through whom the plaintiff claims, we must conclude he had no right to recover against McCowen, who did hold under a deed from her and a patent from the State, and that the verdict of the jury was correct.

The judgment is

AFFIRMED.