Delivered February 3, 1891.

---

## SARAH R. ROBINSON v. W. A. BAZOON ET AL.

### No. 3017.

1. **Limitation—Adverse Possession—Attornment.**—The possession required as basis for title by limitation must continue in the defendant himself for the full period, or in himself and others with whom he can assert some privity and through whom he claims. When a possessor acknowledges himself the tenant of another his possession in his own right ceases, not only against the person to whom he attorns but against the true owner.

2. **Same—Break in Possession.**—The tenant repudiating his attornment can not tack his possession as tenant either with his previous or his subsequent possession. His subsequent possession would operate under the statute upon his repudiation of his contract of tenancy.

3. **Same.**—See facts held insufficient to give title under the statute of limitations of ten years.

APPEAL from San Jacinto. Tried below before Hon. A. T. McKinney, Special District Judge.

Action of trespass to try title, filed March 28, 1888. Defense limitation.

*John R. Peel,* for appellant.—The agreement stopped the statute of limitation at the date of such instrument, and it would not commence to run again without notice to McIver and Peel and a new commencement of claim to the land. Besides, the execution of such instrument makes him hold for McIver and Peel, and not for himself; and he not having claimed to be the owner of the land claimed by him for a period of ten years prior to the execution of said instrument so as to become a

vested right, and not having claimed to be the owner thereof, with possession and occupation thereof for a period of ten years after the execution of said instrument before the filing of this suit, the title by reason of his possession could not vest in him. There was no evidence to support the allegations of fraud.

No brief for appellee.

GAINES, Associate Justice.—This was an action of trespass to try title, brought by appellant against John McIver and several other defendants, including W. A. Bazoon and J. T. Whitten, to recover a league of land granted to James W. Robinson by the State of Coahuila and Texas on the 6th day of October, 1835. Defendants W. A. Bazoon and J. T. Whitten claimed each 160 acres of the survey under the statute of limitations of ten years. The case was tried by the court and the trial resulted in a judgment against all the defendants except the two last named, and, judgment for them for the two tracts claimed by them respectively. From this judgment the plaintiff appeals and assigns as error so much thereof as was rendered in favor of Bazoon and Whitten.

Bazoon testified, in substance, that his father moved on the land claimed by him in 1871, and remained there until he died, about 1880. His father gave him the improvements in 1876, and he had resided upon, used, and cultivated it ever since. He had paid taxes on it for eight or nine years before the trial.

Whitten testified that he had moved on the land in 1876 and had lived upon it, using and cultivating it, ever since. The first time he claimed the land was when he paid taxes on it. He commenced paying taxes after he had it surveyed in 1883.

In December, 1883, W. A. Bazoon, W. P. Bazoon, and T. E. Bazoon executed to John McIver and John R. Peel an instrument in writing by which they acknowledged that they were in possession of the league of land under McIver and Peel and promised to continue to hold possession under them and to act as their agents in leasing the land to others.

On the 7th of December, 1884, Whitten executed a promissory note to McIver for the sum of $25, in which it was recited that it was given in consideration of the use and occupation of the premises upon which he resided, the same being situated upon the J. W. Robinson league. He testified that McIver came to his house and represented to him that he had an interest in the land and that he did not want "to take any of our places, but to hold the balance. He promised he would be back in two or three weeks, but never came back." He further testified that a short while afterwards he repudiated the transaction and posted up notices, etc.

Bazoon testified that he signed the contract with McIver and Peel, but

"did not know whether it was on the Robinson league or not; did not know who it belonged to."

We are of opinion that but for the acknowledgment of title in McIver and Peel by Bazoon, as shown by his contract with them, there was such evidence of adverse possession as would have sustained the judgment as to him. But adverse possession, to be available under the statute, must be continuously hostile and under the same claim of right. The possession must continue in the defendant himself for the full period, or in himself and others with whom he can assert some privity and through whom he claims. When Bazoon acknowledged himself the tenant of McIver and Peel his possession in his own right ceased, not only against them but against the true owner, and the running of the statute in his favor can only be computed from the time that he disavowed that tenancy and reasserted his own claim.

After the execution of his contract with Peel and McIver his occupancy was their possession until he repudiated it, and could not be tacked either to his previous or his subsequent possession in his own right.

It is not like the case of Portis v. Hill, 14 Texas, 69, in which it was held that the mere acknowledgment of title in a third party did not preclude the defendants from claiming that their possession was adverse to the plaintiff.

If his father's possession had been adverse (which, to say the least, seems to be doubtful), and his title under the statute had become perfect before he made the contract with McIver and Peel, that contract would not have affected his title against the plaintiffs in this suit.

Whitten's defense is weaker than that of his coappellee. He did not go into possession until 1876, and it seems did not claim the land as his own until about 1883.

We think the court erred in giving judgment for either of them. The judgment as to them will therefore be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered February 3, 1891.