### JOHN S. McCAMPBELL v. MARY J. DURST ET AL.

Delivered March 18, 1897.

**1. Practice on Appeal—Deficient Record.**

The absence from the record of proceedings on a change of venue and of a superseded answer, will not be cause for dismissing the appeal, when their presence would not affect the decision of any question involved.

**2. Administrator's Sale—Fraud—Accrual of Cause of Action.**

The attorney of an administrator procured an order of court directing the administrator to sell for cash the lands of the estate, and entered into an arrangement by which the purchaser took the title for the benefit of the attorney, and paid nothing therefor. The final account, accompanying the petition for the discharge of the administrator, sworn to by the attorney, showed that the proceeds of the sale of the lands had been used in the payment of the expenses of the sale and administration and in the payment of an allowance to the widow. The attorney paid the expenses, but not the allowance. The purchaser deeded one-half of the lands to the attorney, and gave to the widow a deed to the other half, with a blank left for the insertion

of the name of the grantee. The object of the attorney in procuring the sale of the land was to free it from the claims of creditors. Held,—

(1) That a fraud was committed against the devisees of the will of the deceased entitling them to charge the attorney as constructive trustee.

(2) That their cause of action accrued when the administrator's sale was had, and not when the deed was made to the attorney.

(3) That the administrator's deed was not void, but only voidable, and passed the legal title.

3. Limitations—Recovery of Real Estate—Assertion of Equitable Title.

An action brought for the enforcement of an equity, which was required to be asserted by a direct proceeding to annul a deed, and would not support an action of trespass to try title, is not an action for the recovery of real estate: and, therefore, to such an action the statute of limitations of four years applies.

4. Pleading—Unperformed Contract Set Up.

A plea is properly stricken out, when it sets up a contract and seeks an enforcement thereof, without alleging performance.

APPEAL from Nueces. Tried below before Hon. J. C. RUSSELL.

*James B. Wells, Stanley Welch,* and *L. G. Schultz,* for appellant.— Authorities cited in support of the statute of limitation: Rev. Stats. (1895), art. 3358; McCampbell v. Durst, 73 Texas, 410; Storer v. Lane, 1 Texas Civ. App., 250; Land Co. v. Hyland, 8 Texas Civ. App., 604; Railway Co. v. Titterington, 84 Texas, 218; Cooper v. Lee, 75 Texas, 114; Cooper v. Lee, 1 Texas Civ. App., 9; Walet v. Haskins, 68 Texas, 418; Riley v. McNamara, 83 Texas, 11; Heidenheimer v. Loring, 6 Texas Civ. App., 570; Evans v. Goggan, 5 Texas Civ. App., 130.

*Bethel Coopwood, G. R. Scott & Bro., J. O. Nicholson* and *Thos. W. Dodd,* for appellees—1. Authorities cited in support of the proposition asserting a continuing cause of action: House v. Brent, 69 Texas, 30; Smith v. Taylor, 34 Texas, 604; Herrington v. Williams, 31 Texas, 460; Moss v. Berry, 53 Texas, 633; Williams v. Conger, 49 Texas, 602; Moody v. Holcomb, 26 Texas, 714; Smith v. Montes, 11 Texas, 24; Beckman v. Cary, 129 U. S., 387; Alexander v. Pendleton, 8 Cranch, 463; Orton v. Smith, 18 How., 263; Greer v. Anderson, 35 S. W. Rep., 215; 2 Story's Equity Jur., sec. 701; 3 Pom. Eq. Jur., p. 435, sec. 1398; 2 Am. & Eng. Ency., Law, 298, 312; 12 Am. & Eng. Ency., Law, 298, 312; Angell on Limitations, sec. 307.

2. On the proposition that the administrator's deed was void, appellees cited: Aiken v. Horn, 2 Willson C. C., sec. 10; James v. Sierra, 22 Texas, 370; Peters v. Caton; 6 Texas, 559; Venters v. Smith, 10 Pet., 175; Rorer on Judicial Sales, sec. 128; Hamilton v. Pleasant, 31 Texas, 641; Brown v. Christie, 27 Texas, 76; Potters' Dwarris on Statutes, 146.

WILLIAMS, ASSOCIATE JUSTICE.—This action was instituted originally in Cameron County, where the land involved is situated, on the 26th day of October, 1883. The record shows that the venue was changed to Nueces County, in the District Court of which the judgment appealed from was rendered, but does not contain any copy of the pro-

ceedings by which the change was made. It appears that both parties appeared and participated in the trial, without objection, and appellant, against whom the judgment was rendered, makes no question as to the jurisdiction of that court or as to the regularity of the change of venue.. Because of the omission referred to, and because, it is said, the record does not contain a copy of the former answer of the defendant, which was supplanted, before the trial, by an amendment, appellees have moved to strike out the transcript and dismiss the appeal, but have not asked for a certiorari to bring up the other parts of the record.

In the report of the former appeal of the case (73 Texas, 410) will be found a full statement from which its nature may be seen. It is, in its essential features, the same now as it was then, though there are some differences of detail, which will appear from our conclusions, but which do not materially affect the decision which we will make. The questions which we regard as the decisive ones arise out of the rulings of the court upon the defendant's (appellant's) exceptions and pleas asserting the defenses of stale demand and limitation of four and ten years. The decision of them makes it proper to state the general tenor of the petition and of the exceptions thereto.

The amended petition, on which the cause was tried, showed by its allegations that plaintiffs, except J. B. Armstrong, are the heirs and devisees of James H. Durst, deceased, and that Armstrong has acquired the interest of Mortimer T. Durst, deceased, who was one of such heirs and devisees; that Mortimer T. Durst, in 1869, was appointed, by the court in Nueces County, administrator de bonis non of the estate of his father, James H. Durst; that defendant was his attorney and adviser in procuring the appointment and in the subsequent conduct of the administration; that on the —— day of November, 1870, defendant, while acting in such capacity, contriving to defraud the devisees of their land, did, without any just or legal cause therefor, but ·in contravention of law, procure an order of the District Court of Nueces County purporting to authorize and require the administrator to sell the land in controversy without subdividing same as required by law; that defendant, acting as such attorney and still pursuing his purpose, conspired with Richard Jordan and procured him to bid in the land for defendant, with the understanding that Jordan should not pay any part of the purchase price offered; that, by procurement of defendant, the sale was made January 1, 1871, in the name of the administrator, and the land was bid in by Jordan, in accordance with this agreement, at the sum of $697.84 for 61,992 acres; that defendant on the —— day of May, 1871, procured an order to be made by the court approving such sale; that defendant on the —— day of May, 1871, prepared and procured to be signed and delivered by the administrator to Jordan a deed purporting to convey said land; that Jordan never paid to the administrator or to any one any part of the sum bid by him for the land, but took the deed in pursuance of such agreement with defendant; that on the —— day of November, 1872, defendant, still acting as attorney

for the administrator, procured an order to be made by the court approving the final account of the administrator and closing the administration; that on the 23rd day of May, 1873, the defendant took from the administrator and from Mary J. Durst, the widow of James H. Durst, for herself and co-heirs and legatees, a receipt purporting to be for the proceeds of the sale of property belonging to said estate, but in fact for blank deeds to one-half of several tracts of land pretended to have been sold at the sale aforesaid, among them the said interest in the land in controversy, part of such deeds executed by Richard Jordan and part of them by another; one of which, signed by Jordan, dated May 31, 1873, purported to convey 30,996 acres of the land in controversy, with blank for the name of grantee, wherein some person, without her knowledge or consent, wrote the name of Mary H. Durst, now one of the plaintiffs, as Mary Armstrong, and caused same to be recorded in Cameron County; that the consideration of $3500 recited in this deed was not paid, but that the deed was procured by defendant without consideration, pursuant to his covinous scheme to defraud said devisees and to impose upon the confidence of his client, and that plaintiffs claim nothing under such deed; that on the 23rd of March, 1875, defendant procured Jordan to execute to him a deed for the upper half of the 61,992 acres of land, for a pretended consideration of $5000, not in fact paid. All of these things were alleged to have been done by defendant in pursuance of his scheme, first alleged, to defraud the devisees of the estate. The petition charges that the deeds have been put of record and cast a cloud upon plaintiffs' title, preventing them from making disposition of their property and causing them expense, labor and annoyance; that defendant threatens to sue upon such deeds to recover half of the land, and to annoy and harass them in their possession, use, and enjoyment thereof, and they fear he will put his threats into execution. They offer to deliver up the deed to Mary H. Durst, for such disposition as the court may decree, and pray that defendant be required to deliver up the deed from the administrator to Jordan and that from Jordan to defendant, and that they be cancelled and held for naught; that defendant be enjoined from suing on such deeds, and from molesting and interfering with plaintiffs in their enjoyment of their right, title and possession of the land by virtue of such deeds; that the cloud upon the title be removed, and that they be quieted in their title.

The exceptions to the petition raised the questions of limitation and stale demand referred to. No disability of any of plaintiffs was pleaded in any of their pleadings, in avoidance of limitation, nor are there any allegations that, for any time after the administrator's sale referred to, there was any concealment of the alleged fraud, or that plaintiffs did not at once learn of it.

The answer of defendant is too lengthy for even a summary of its allegations to be given. It admitted that Mary H. Durst and James W. Durst were minors when the transactions alleged in the petition occurred, but averred that they became of age, the former in 1876, and

the latter prior to February, 1879. The answer set up the contract and power of attorney of April 22, 1870, as stated in the former opinion, and unnecessary to be restated here, and sought, under them, to show right to half the land in controversy. The allegations failed to show, however, that the services stipulated for in that contract had been rendered, or that the debts had been paid, otherwise than by the procurement of the sale of the lands attacked by plaintiffs, and it was admitted that this was done for the purpose of releasing the land from the claims of creditors of the estate. Exceptions to all parts of the answer which sought to establish a right under the contract were sustained by the court; but such parts as sought to explain and sustain the administrator's sale, otherwise than as a performance of the contract, were allowed to stand. This general statement of the pleadings is thought sufficient for the purposes of the decision.

At the trial there was very little conflict in the evidence. The facts, as we find them, are, that in 1869 Lovenskiold & McCampbell were engaged as attorneys by Mary J. Durst, the widow, and Mortimer T. Durst, the eldest son of James H. Durst, deceased, to represent them in procuring the removal of the executors of the estate and the appointment of Mortimer as administrator de bonis non with the will annexed, and in the subsequent conduct of the administration by Durst. At that time, and during the whole of the proceedings narrated, Mrs. Durst and Mortimer, as well as all of the plaintiffs, resided in Austin, and the attorneys at Corpus Christi, where the administration was pending. Soon after the appointment of Mortimer, the attorneys applied for an increase of an allowance which had been previously made to the widow, and secured action which raised such allowance to $2464. On the 21st of October, 1870, they filed, in the name of the administrator, an exhibit and application for an order of sale of all the lands of the estate, for the purpose of paying the debts of the estate. The exhibit showed the estate to be, as it in fact was, largely insolvent.

On the 26th day of November, 1870, an order was procured, by the attorneys, for the sale of all of the land, including that in controversy, enough of it to be sold for cash to pay the expenses of administration and the allowance to the widow, and the remainder on credit. On the day of sale, Lovenskiold & McCampbell arranged with Richard Jordan to bid in the lands, fixing minimum prices below which they should not be allowed to go to others, the understanding being that such purchases were to be made for the benefit of the attorneys and of those whom they represented, and that Jordan should not be required to pay the amount bid by him, but should hold the land subject to the orders of the attorneys, to be conveyed as they should direct. This understanding was carried out, and at the sale on the 7th day of February, 1871, most of the land, including that in question, was bought in by Jordan for cash. The sale was reported to the court and was on the 10th day of March, 1871, confirmed, by an order which directed the administrator to make title to the purchaser upon his complying with the

terms of the sale. The administrator, on the —— day of May, 1871, executed to Jordan a deed conveying the land thus bid in, and reciting payment of the cash consideration. The report of sale was signed and sworn to by Mortimer T. Durst, in person, he having gone to Corpus Christi to attend the sale, which was the first and only time he was present at any of the proceedings. The deeds were sent to him at Indianola, where he signed and returned them to his attorneys.

The deed and the report of sale were the only papers ever executed by him, in person, in the administration. The evidence is such as would sustain a finding, either that he knew of and participated in the understanding with Jordan, and signed the report of sale and the deed for the purpose of carrying it out, or that he had not such knowledge. As the question was submitted to the jury, in accordance with their finding, we conclude that he was innocent of participation in the purpose of the attorneys and Jordan, leaving the practical management of the affairs and the collection of the purchase money to the former.

No money was ever paid by Jordon or any one else for this land, except as stated below. On the —— day of November, 1872, the attorneys presented to the court a petition, in the name of the administrator, for his discharge, accompanied by a final account, sworn to by one of the attorneys, in which the administrator was charged with the sum which the lands brought at the sale, and was credited with the expenses of the sale and of administration paid, amounting to $1284.41, as well as with the sum of $2467.90 as paid to the widow on her allowance. The debits and credits in this account were exactly equal. Of these sums credited to the administrator, all but the last named were paid by the attorneys, but not at the time of the sale. Appellant testified that the amount of Jordan's bid was assumed by his firm. Upon this point, the evidence shows satisfactorily that they expected to pay such part of it as might be necessary to discharge claims that had to be paid out of the proceeds of the sale, such as expenses of administration. But the evidence shows, we think, and, under the instructions, the jury must have found, that they never paid any sum to the widow on her allowance, from which we conclude that it was no part of their expectation that they would have to do so. And we find there was no further assumption of the bid of Jordan than thus explained.

The purchases by Jordan embraced many other lands besides that in controversy, of which, until 1873, he continued to hold the titles, except some that were from time to time sold under the direction of Lovenskiold & McCampbell, and the proceeds divided with the devisees. On the 23rd day of May of that year, the following receipt was executed by Mrs. Durst and Mortimer:

"2115.00 Coin. Received at Austin, Texas, May 23, 1873, from Messrs. Lovenskiold & McCampbell, the sum of two thousand one hundred and fifteen coin dollars, which sum, upon the delivery to me of the hereinafter specified conveyances in blank by quit claim from Richard Jordan and from Edwin J. Nickerson, of Nueces County, Texas, is in

full of all demands against said Lovenskiold & McCampbell under and
by virtue of a certain contract entered into with them, April 22, 1870,
viz:

"1st.   Deed to lower half of the Barreta tract in Cam-
          eron County, for acres.....................30,992
"2nd.   Deed to Eastern half of Mariano Lopez de Her-
          rera tract in Nueces County, acres........... 7,200
"3rd.   Deed to lower half of the Cayetano de la Garza
          tract in San Patricio County, for acres......   532
                                                        ———
                   "Being for acres................38,745

(Signed)   "Mortimer T. Durst, as late administrator of the estate of
James H. Durst, Deceased.   M. J. Durst."

The sum of money named therein was in fact paid, but not as the al-
lowance of the widow, or as any part of the purchase money of the land
at the administrator's sale, but probably as part of the proceeds of some
of the lands which had been sold by Lovenskiold & McCampbell
after the sale and deed to Jordan.

On the 31st day of May, 1873, the defendant McCampbell, whose
partner had died, after having sold out his interest to him, caused Jor-
dan to execute deeds with blank spaces left for the names of grantees,
one of which, for a recited consideration of $3500, conveyed an undi-
vided half of the land in controversy, which were forwarded to Mrs.
Durst or to Mortimer T. Durst.   The blank in the deed for the land in
controversy was afterwards filled by Mortimer T. Durst with the name
of Mary H. Durst, then a minor, and it was recorded April 6, 1874, in
Cameron County.   On the 23rd day of March, 1875, Jordon executed
to McCampbell a deed for the other half of said land, reciting a consid-
eration of $5000 which was recorded in Cameron County on the 24th
day of May, 1882.   No consideration was paid for any of these deeds.

From the time of the conveyance by the administrator to Jordan,
Lovenskiold & McCampbell, and afterwards McCampbell, acknowl-
edged an interest in the devisees of Durst of one half of the lands so
obtained, but no more, and claimed the other half under the contract of
employment, which contract was not in evidence.   The object of Lov-
enskiold & McCampbell in procuring the sale of the land was to free it
from the claims of creditors, and thus obtain it for themselves and the
devisees.

*Opinion.*—1.   The motion to dismiss is overruled.   For the purposes
of this decision, the order for the change of venue and the superseded
answer are unnecessary.   If their presence would affect the decision of
any question, appellant can obtain no advantage from their absence,
all presumptions being against him, and appellees have not asked to
have them brought up.

2.   We think that the facts alleged in the petition and shown by the
evidence, as above stated, constituted a fraud, committed by defendant

and those acting in conjunction with him, against which the devisees of the will of Durst are entitled to obtain relief in the manner sought, and, through a decree of the court, to charge defendant as constructive trustee and to annul the legal title under which he claims, unless they have participated in the fraud in such way as to preclude them, or are barred by limitation. The fact that the creditors of the estate were the ones against whom the fraud was directed and chiefly operated does not relieve the transaction of its character of a fraud against those whose title was, in this way, sought to be divested out of them. Though the defendant may have intended, by this method, to secure to the devisees a part of the land of the estate, freed from the claims of creditors, he proposed to do it by a scheme which the law cannot sanction, and by which the devisees are not bound, unless they have estopped themselves from attacking the transaction by becoming parties to the wrong.

3. The next, and to our minds, the controlling, questions are those of limitation and stale demand. Upon the former appeal it was held that the action was not stale. As the four and ten years' statutes of limitations were then relied on, it must be admitted that the court, by implication, decided against appellant on them, though nothing was said in the opinion about the statute. The court is not precluded from re-examining the question, and, if convinced that on this point the decision was clearly wrong, from correcting it. Huddleston v. Kempner, 37 S. W. Rep., 1066.

The questions arise upon exceptions to the petition, and we will inquire whether they should have been sustained.

Article 3207, Revised Statutes, is as follows: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterward."

The provisions of the Revised Statutes concerning limitations are divided into three chapters. The first is entitled, "Limitations of Actions for Land," and it prescribes three periods of limitation to govern suits against parties in actual possession. The actions limited are mentioned in the three and five years' statutes as suits to "recover real estate" and in the ten years' statute as an "action for the recovery of lands, tenements, and hereditaments." The second chapter is headed, "Limitation of Personal Actions," and it includes the section above quoted. It is evident that there is no limitation prescribed for suits for the recovery of land, where there is no adverse possession. It is equally evident that there is a limitation prescribed for every personal action; that is, for any action save one for the recovery of real estate not actually possessed. As the defendant has had no adverse possession, the question here is whether or not the action is one for the "recovery of real estate." This language was used in the statute of 1846 regulating venue of suits, which provided that the action should be brought in the county where the land or a part thereof was situated, "where the recovery of land or

damages thereto is the object of the suit." This provision has often received construction.

In Finch v. Edmondson, 9 Texas, 504, suit was brought in Walker County by the heirs of Finch to cancel a deed to land in Polk County, made by the administrator of his estate, and to quiet plaintiffs in their title, on the ground that the sale had been procured and made by collusion and fraud between the administrator and the purchaser, and also on the ground that such sale was void because of want of power in the court to order it. It was held that this was not a suit for the recovery of land, and that it was properly brought in the county of the defendant's residence.

In Morris v. Runnells, 12 Texas, 175, the plaintiff sued in Rusk County for the rescission of an executed contract for the sale of land situated in Fannin County, on the ground that the sale was induced by fraudulent representations of the vendor. The court held this not to be a suit for the recovery of land, saying: "Land, it is true, is the subject-matter of the contract. But there can be no more reason for requiring the suit to be brought in the county where the property was situated, in this case, than in a case where the object of the suit is the rescission of a contract relating to any other species of property."

In Hearst v. Kuykendall, 16 Texas, 327, which was a suit for specific performance, Chief Justice Hemphill, in holding it properly brought in another county than that in which the land is situated, said: "An action for the recovery of lands has a well known and definite signification, and means an action of ejectment, trespass to try title, or suit to recover the land itself."

In Miller v. Rusk, 17 Texas, 170, also a suit for specific performance, brought in the county of the situs of the land, but not of the residence of the defendant, Justice Wheeler, in holding that the action was properly dismissed, on plea to the venue, said: "The recovery of land manifestly has reference to the possession; and 'damages thereto' as manifestly has reference to an injury to the possession, or to the freehold or estate." It was also said: "It is not doubted that a suit might have the two-fold object of the specific performance of a contract to convey, and also the recovery of the possession of land and mesne profits or damages. But that is not this case."

Vandever v. Freeman, 20 Texas, 333, was a suit, in a county other than that of the situs of the land, to cancel a deed absolute in form, under which defendant held, and to establish a resulting trust in plaintiff's favor. This was likewise held not to be a suit for the recovery of land.

It is worthy of remark that, in revising the statutes in 1879, the Legislature broadened the language of the venue statute so as to embrace within the exception under consideration, not only "suits for the recovery of land or damages thereto," but also "suits to remove incumbrances upon the title to land, suits to quiet title to land and suits to prevent or stay waste on lands." But, while this change was made in the pro-

vision regulating venue, the phrase "suits for the recovery of land" was retained in the provisions concerning limitation; and this after the interpretation of it above quoted had been given by the Supreme Court.

In Thompson v. Locke, 66 Texas, 383, the plaintiff, having located certificates upon land claimed by him to be vacant, brought suit in the county to which the county in which the land lay was attached for judicial purposes for a mandamus to compel the surveyor, who resided in another county, to survey the land; and joined a third party, who also claimed under a location upon the same land, because of which the surveyor had refused to make the survey for plaintiff, in order that such claim might be adjudicated and canceled. Discussing the question of venue, Judge Stayton says: "Under former decisions of this court, it is evident that the present suit is not one to recover land or damages thereto, within the meaning of the statute;" and he quotes from the opinions in Hearst v. Kuykendall and Miller v. Rusk, supra. He proceeds to discuss, at length, the additions made in revising the statutes to the provisions regulating venue, and holds that they embrace the suit then before the court, in the class which are required to be brought in the county wherein the land is situated.

Other decisions bearing indirectly upon the question before us are those in which the Supreme Court has discussed, and defined the nature of the action for trespass to try title, and the character of title required to support it. Dangerfield v. Paschal, 20 Texas, 536; Grimes v. Hobson, 46 Texas, 417; Magee v. Chadoin, 44 Texas, 488; Allen v. Stephanes, 18 Texas, 659; Ayers v. Duprey, 27 Texas, 594; Day Land & Cattle Co. v. State, 68 Texas, 525.

From the decisions, it is apparent that the question whether or not a particular suit is one for the recovery of land may depend, not only upon the character of the relief sought, but upon the nature of the title asserted. One holding a title to land sufficient to enable him to sue directly for its recovery, may proceed merely to obtain some personal redress against the defendant, as incidental to his ownership, and such a suit plainly would not be one for the recovery of the land. Or he may sue to recover the land, and also to obtain additional affirmative relief necessary for his protection in and enjoyment of his title; and the fact that the latter feature is added to the suit would not deprive it of its character of one for the recovery of real estate. Day Land & Cattle Co. v. State, supra; State v. Snyder, 66 Texas, 687.

In both these supposed cases it is assumed that the plaintiff possesses a title sufficient to enable him to sue directly for the land, and the character of the suit, whether one for the recovery of land or not, depends, not on his title, but upon the shape he has given to his proceeding. But a person may have an equity entitling him to a decree, which, when rendered, would give him title, but not in itself, until so enforced, constituting title sufficient to support a simple action for the land. Title, in this State, may, of course, be either legal or equitable, and trespass to try title may be maintained upon one as well as upon the other. But the

right of a plaintiff must amount to title of one or the other character, as contradistinguished from the mere equity of the kind just mentioned. The holder of such an equity may sue to obtain a decree enforcing it, and, under our system, may, in the same suit, obtain judgment for the land, as the consequence of the establishment of his equity (Miller v. Rusk, supra); but, unless he is entitled to the former decree, he cannot obtain the latter. This principle underlies the decision in Thompson v. Locke, supra, where it is said: "The appellant does not claim to have the legal title to the land, but seeks to establish the superiority of the right held by him to that of any other person. To determine whether his claim is well founded, an inquiry into the facts on which the parties base their respective claims must be made, and, if found in his favor, the decree to be rendered as to his adversary would be a decree that he has the superior right to the land, followed by such orders as may be necessary to protect the right thus established against the assertion of the adverse claim in any other court, or in any of the departments of government."

If the plaintiff in such an action shows right to a decree which, when rendered, would invest him with title sufficient to maintain an action for the land, he may doubtless, aside from questions of venue and other questions of mere procedure, obtain both the affirmative decree and judgment for the land in one action. But the judgment for the land would be the consequence, merely, of the relief primarily granted, and could not, but for that relief, be recovered. And hence it is obvious that the question, whether or not that primary relief should be granted, is to be first determined by the same rules which would govern if the suit were for it alone. If, for instance, such an action were stale or barred by limitation, obviously, this could not be avoided by connecting with it a prayer for the recovery of the land. This could not make the action one for the recovery of land, because the title relied on would not be sufficient. The plaintiff would have no title, unless and until he should obtain the decree establishing and enforcing his right, and he could not get that decree because his action for it would be barred. Chamberlain v. Boon, 74 Texas, 659; Same Case, 82 Texas, 480.

The present action is classed by appellee's counsel as one to remove a cloud from a legal title to land of which they are in possession; their contention being that the deeds under which defendant holds are void, but that day by day they cast a shadow upon appellee's title, giving rise to a continuing cause of action, to which the statute of limitations does not apply. It may be conceded, for the purposes of this case, that, if their proposition as to the character of the two titles is sound, the conclusion contended for would follow, and that the action would not be barred. Indeed, it may be admitted that, if the titles were as contended, there would be no limitation to the suit. While the petition is not formally one in trespass to try title, and does not, in terms, ask for recovery of the land, it puts in issue the two titles, and prays for a

judgment which would have all of the conclusive force of a judgment in trespass to try title, except to give possession, which plaintiffs already have. If, therefore, the title set up by plaintiffs were one upon which such an action could be maintained, this suit might well be considered one for the recovery of lands, and, there being no adverse possession, there would be no limitation. The other relief prayed for would follow as the consequence of the recovery of the land.

But, consistently with the later decisions in this State, we cannot hold that the deeds under which the defendant claims are void. We think the former decision in this case holds otherwise. It is expressly said in that opinion that the probate orders are not void, and it is assumed that the deed of the administrator to Jordan and of the latter to defendant are not; for the action is defined as one to cancel the deeds and remove cloud, and as "a direct proceeding to vacate the deeds, which may be done if the facts alleged are true, although the orders in probate stand." If the deeds were void, the court would scarcely have thus characterized the action, and would not have considered the question of stale demand as having any place in the case; for, if the legal title was in appellees, it would be absurd to speak of it becoming stale in equity.

It is urged that the deed made by the administrator was void, because it was one which the order of the court did not authorize, but was made in violation of the order, in that payment of consideration was not exacted before it was delivered. But we think that everything essential to the passing of the legal title out of the estate is shown by the petition to have been done, and the mere fact that the purchase money was not paid would not destroy the effect of the orders and of the deed. The administrator had authority both to deliver the deed and to receive the purchase money. If he did the former, without the latter, what he did was none the less effectual to pass the legal title. He became responsible to the estate for the price of the land, and if he accounted for it no one would contend, aside from fraud, that the fact that he did not exact it from the purchaser before delivery of the deed rendered the title even voidable. This proves that the deed was not, for this reason alone, void when delivered; for, if it were, no subsequent accounting for the money could validate it, nor could a subsequent payment by the purchaser give validity to a nullity. If the deed was void, though reciting payment of the purchase money, it could not protect an innocent subsequent purchaser, which plainly is not true.

In Giddings v. Steele, 28 Texas, 752, the District Judge charged that, if the purchaser at the administrator's sale had not paid for the certificate, his title would be void. The Supreme Court held that this was error. The sale there was, it is true, upon twelve months' credit; but, if failure to exact payment of the money in a cash sale would of itself render the deed void, failure to take the note of the purchaser in a credit sale, and to exact payment of it, would have like effect. So, in Finch v. Edmonson, supra, the allegation was that the administrator had failed

to take the personal security and mortgage required by the terms of sale, but had taken the purchaser's note alone; but it was not contended that this rendered the deed void. The fact was relied on only as one of the circumstances showing fraud. See, also, Wornell v. Williams, 19 Texas, 180; Sypert v. McCowen, 28 Texas, 635; Perry v. Blakey, 23 S. W. Rep., 807.

None of the authorities referred to by appellees in support of this contention sustain it, further than by the statement of the general rule as to the administrator's authority being derived from the order of the court. The case of Sierra v. Judson, 22 Texas, is the nearest in point, but it will be seen that it was the deed of an attorney in fact of the guardian that was held void in that case, on the ground that he had not authority from the guardian to execute the deed. The guardian had made no deed. In Williamson v. Berry, 8 How., 532, the person whose deed was held void was not authorized to make the sale which was made. It was not a sale by an administrator, but one made by a private person acting under special authority conferred by act of the Legislature and the orders of the chancery court, and the sale was not of the kind which he was empowered to make. We think that a deed executed and delivered under such circumstances passes the legal title, subject to the right of those interested in the estate to set aside the sale or recover the purchase money, if necessary for the protection of their rights.

The contention is next advanced that the conveyance by the administrator is shown to be void by the allegations of fraud. There may be found, among the earlier decisions, dicta to the effect that sales thus made collusively and fraudulently by administrators, are void. These remarks are found in cases, however, in which, by special pleadings, the sales were directly attacked and sought to be avoided, and not in actions of trespass to try title, or other collateral proceedings. The later decisions of the Supreme Court have settled the doctrine to be that sales by an administrator to himself, through the intervention of another, or sales made to another for the joint benefit of himself and the administrator,—in short, collusive and fraudulent sales, by which the administrator and purchaser have sought to defraud the estate of land,—are not void on account of that fraud, but are merely voidable upon direct attack. The decisions thoroughly establish the doctrine that, however regular the proceedings in court may be, and though the orders of court remain undisturbed, the wrongdoer nevertheless will not be permitted to enjoy the fruits of his wrong, but will be adjudged to have taken as constructive trustee for the persons defrauded, and made to yield up the property. The right of the injured persons, however, is as clearly held to be of a character which must be set up by special pleading in a direct proceeding, and cannot be made effectual under the general allegations of the petition, or of the plea of "not guilty" in trespass to try title. Rutherford v. Stamper, 60 Texas, 450; Fisher v. Wood, 65 Texas, 205; Dodd v. Tampleton, 76 Texas, 62; Martin v. Robinson, 67 Texas, 368; Capt v. Stubbs, 68 Texas, 222;

Murchison v. White, 54 Texas, 78; Pearson v. Burdett, 26 Texas, 157; Kleinecke v. Woodward, 42 Texas, 311.

The fraud here is not charged upon the administrator, though from the allegations alone, it would be difficult to acquit him of participation; but, certainly, a purchase by the attorney of the administrator, through the medium of another person, cannot be treated as void, when the same purchase, if made by the administrator himself, would have been void able only.  Schouler on Executors, sec. 358.

As the right of plaintiffs, therefore, was one which was required to be asserted by a direct proceeding to procure a degree annulling the deeds under which defendant claims, and hence could not support an action of trespass to try title, it seems to necessarily follow that an action such as this, of the kind necessary to enforce such right, is not an action for the recovery of land in the sense of the statute of limitations.  An unavoidable consequence of this is that the four years' statute applies, and the cause of action was barred before the suit was brought, at whatever period the cause of action may be considered to have arisen, as more than four years elapsed after the adoption of the Revised Statutes before suit was brought.

This result was in harmony with the doctrines which had been applied by the courts, before this statute was passed, in suits asserting such rights of action as this.  They were never placed on the same plane as legal titles, and were always treated as liable to become stale by lapse of time, if not asserted, whether there were adverse possession of the land or not.  While the holder of the legal title might sue one asserting an adverse claim, though not in possession, no limitation ran until possession was taken.  Not so with persons invested with rights which required the affirmative action of equity to mature them into complete title.  Periods of time, varying with the circumstances of the case, were set within which the right was required to be prosecuted.  Causes of action did accrue to those possessed of such rights, though no possession of the land were taken by the adverse party, and they were subjected to the rules limiting actions.  To hold that this four years' statute of limitation does not apply, would be to hold that there is no limitation to this kind of a suit, and that equites such as this are only barred by adverse possession, or else to say that the courts are still to have resort in such cases only to the doctrine of stale demand. We think the question is virtually settled by the decisions, but because of the holding in this case on former appeal we have thought it proper to go into the question.  Cooper v. Lee, 75 Texas, 114; Id., 1 Texas Civ. App., 9; Storer v. Lane, 1 Texas Civ. App., 250; Railway v. Titterington, 84 Texas, 218; Heidenheimer v. Loring, 6 Texas Civ. App., 570; Walet v. Haskins, 68 Texas, 418.

While recognizing the former decision as impliedly overruling the present contention of appellant, we feel constrained to hold that the decision was wrong.  We think it was further wrong, in the application made of the doctrine of stale demand, if that were longer applicable,

when the cause of action was treated as having accrued first in 1875, when Jordan delivered the deed to appellant. The wrong complained of in the petition was as complete when the legal title was invested in Jordan as when the parties had parceled out the land. It seems to us to be immaterial, under the facts alleged, whether the title was in Jordan or McCampbell. They were alleged to have been co-conspirators, and, when the title was obtained in either of them, the fraud upon plaintiffs was completed, and at that time we think their cause of action accrued. The answer of defendant and the proof show a state of facts not alleged in the petition, which probably occasioned the remark in the opinion to which we have referred. McCampbell claims that the purchase was made for the joint benefit of himself and plaintiffs, and he, always recognized their right to half the land, and finally executed deeds to them for same. Now, if this were a lawful transaction, and plaintiffs were suing to enforce the trust thus arising, their cause of action would have accrued only when it was repudiated, which never occurred. But plaintiffs sue not to enforce an express trust entitling them to half the land. They repudiate that, and seek to charge all of the property with a constructive trust arising out of defendant's fraud. This kind of a charge implies an adverse claim in the defendant from the beginning, and limitation commences to run "from the period at which the cestui que trust could have vindicated his right by action or otherwise." Cole v. Noble, 63 Texas, 434, and authorities cited.

We have so far considered the question as presented by the petition. The evidence presents nothing to avoid the effect of limitation, and no further discussion of this point in the case is necessary. We hold, first, that article 3207 applies to the cause of action asserted, and that the action was barred when brought; and, second, that, even under the rules on the subject of stale demand, the cause of action set up accrued when the title was conveyed to Jordan, and consequently Mrs. Durst and the purchaser of Mortimer's interest were barred. Of course, we recognize the rule that limitation would not run against concealed fraud until such time as, with ordinary diligence, plaintiffs ought to have discovered it; but no attempt has been made, either by pleading or evidence, to avoid the plea on this ground. Our view of this renders a reversal necessary; and, realizing that the overruling of the former decision gives the Supreme Court jurisdiction of the case, though remanded for a new trial, we have thought it proper to state our findings in detail.

4. We cannot see that the court erred in striking out the parts of the answer indicated by the ruling on the exceptions. The defense set up under the original contract was not maintainable as pleaded. While the contract, as was held on former appeal, was valid and legal, no performance of the conditions upon which Lovenskiold & McCampbell were to acquire half the land was shown. The things alleged to have been done were not the things stipulated in the contract, and hence were no performance. Indeed, if it should be assumed that the contract stipu-

lated for the course pursued by the attorneys, for the purpose alleged in the answer, it would have been an illegal undertaking, which would not be enforceable in a court of justice. The plea did not set up the contract for any other purpose than to secure its recognition and enforcement, and, for the reasons given, it showed no defense. Other objections to it perhaps might be pointed out, but these are the fundamental ones.

5. We think all of the evidence, admission of which is complained of in the ninth assignment of error, was admissible, except that portion wherein Mrs. Durst stated her understanding and belief as to facts stated. These statements plainly were based upon hearsay, and represented the opinion of the witness derived from information from others, or from circumstances which she fails to detail. The fact which this testimony was intended to prove was admissible under the pleadings, but these statements were incompetent to prove it.

6. The tenth assignment presents a matter not likely to arise again, and it is unnecessary to discuss it.

7. The contract pleaded by defendant not having been offered in evidence, it was proper for the court to instruct the jury not to consider it. If it was admissible for any purpose, besides that for which it was pleaded, no suggestion of such a purpose was made below or is made in this court.

8. As we have held that the deeds in question, though fraudulent, were not void, and, as this is material to the defense of limitation, it would be error for the court to charge, as it did at the trial, that they were nullities. Our views on the subject are indicated above.

9. The petition alleged title in Armstrong by purchase of Mortimer Durst's interest in the land, but this was not sustained by the evidence, no deeds being offered. As this question will not probably arise again, it is unnecessary to determine whether it would require us to reverse the judgment because of the omission.

Further discussion is considered unnecessary.

*Reversed and remanded.*