**SWINDALL et ux. v. VAN SCHOOL DIST. NO. 53 et al.**

No. 10946.

Court of Civil Appeals of Texas. Dallas.
March 14, 1931.

Rehearing Denied April 18, 1931.

Crawford & Fletcher, of Grand Saline, and Marion S. Church, and Coker, Wilson, Rhea & Neel, all of Dallas, for appellants.

Wynne & Wynne, of Wills Point, and Vinson, Elkins, Sweeton & Weems, of Houston, for appellees.

LOONEY, J.

G. W. Swindall and wife sued for the twofold purpose of canceling, for fraud and deception practiced in procuring a deed executed by G. W. Swindall, February 22, 1924, conveying an acre of land for school purposes to the school authorities of the Van school community or district in Van Zandt county; also to cancel a deed executed by the school authorities, February 21, 1924, conveying the land to R. L. Wells, a certain oil lease and easement granted by Wells, and all royalty contracts, titles, and interests claimed by defendants derived from and under the said deed from Swindall to the school authorities; to remove said instruments as clouds upon plaintiff's title; and also to recover the title to and possession of the land.

The answer filed by defendants contained, among others, general denials, pleas of not guilty, estoppel, that they were innocent purchasers, and the bar of limitation under the statutes of three, four, five, and ten years.

The case was tried to a jury, and, at the conclusion of the evidence, the court directed a verdict for defendants, and judgment was rendered accordingly, from which plaintiffs appealed, and urge, as ground for reversal, that the evidence sustained their allegations, and was sufficient to raise the issue of fraud and misrepresentation alleged to have been practiced by and on behalf of the school authorities on G. W. Swindall that led him to execute the deed in question under the belief that it was in lieu of a deed formerly executed by him, and that it contained a limitation, to the effect that, when no longer used for school purposes, the land would revert to him, his wife and heirs, whereas the deed he was thus fraudulently and mistakenly led to execute was absolute in form and conveyed the land to said authorities without limitation.

The rule is axiomatic that a trial court should never direct a verdict unless the evidence, as a matter of law, will admit of no other conclusion; therefore, in deciding the question presented, we must, as the trial court should have done, disregard any evidence at all favorable to defendants, and consider alone, in its most favorable light to plaintiffs, the evidence that supports their contention. Eastham v. Hunter, 98 Tex. 560, 86 S. W. 323; Walker v. Railway Co., 51 Tex. Civ. App. 391, 112 S. W. 430; Crowley v. Finch (Tex. Civ. App.) 153 S. W. 648; Drew v. American etc. Co. (Tex. Civ. App.) 207 S. W. 547; Guedry v. Jordan et ux. (Tex. Civ. App.) 268 S. W. 191, 195.

The material evidence on the issue is substantially this: G. W. Swindall testified that, about 1880, he conveyed the acre of land in question to the trustees of the Swindall school community (now the Van school community, or district), the conveyance containing a limitation, to the effect that, when no longer used for school purposes, the property would revert back to the grantor and his wife and heirs; the school authorities, in such event, were to have the improvements, and grantor was to pay them $3 back for the land. This conveyance was lost and never recorded, and a number of years later plaintiff executed in lieu a second deed, similar in terms and provisions to the first, the only difference being that, in the latter, the land was conveyed to the county judge for the benefit of the school, instead of to the trustees, as in the first deed. The second deed was not recorded and was likewise lost, so on February 22, 1924, plaintiff was induced to execute the deed which he now seeks, among others, to have canceled and removed as a cloud upon his title.

The record discloses that, on February 21, 1924, the school authorities sold and conveyed the said acre of land and improvements to defendant Wells, and, in order to satisfy him as to the title, undertook and did procure from plaintiff, G. W. Swindall, the execution of the deed in question.

It is pertinent to state at this juncture that, after the execution of the second deed, but before the execution of the third Swindall moved about 15 miles from the Van community, and had been residing at Pole Town seven or eight years; at that time no school was maintained upon the premises, nor had been for at least seven years, the trustees hav-

ing erected a new schoolhouse where school was conducted; and it seems, for a time after the school was moved, no particular use was made of the acre of land, but for five to seven years prior to February 22, 1924, it had been occupied by tenants and the rents collected were used by the trustees for the benefit of the school. Plaintiffs had known for some time prior to February 22, 1924, that the property was not used for school purposes, but it is not clear that they knew just what use was being made of the property by the trustees.

Swindall detailed the circumstances of the execution of the deed as follows: " * * * Mr. Horace Cook came to me and took the matter up with me in 1924; he said the other deed was lost and that they wanted a third deed in the place of the one that he claimed was lost. He wanted a deed just like the second one I had executed. Mr. Cook did not read that deed to me; he told me it was in the place of the one that was lost. He did not tell me what was in the deed—just said it was like the second deed. I had known Mr. Cook ever since he was a boy. * * * I had no reason to believe that the deed was not as represented by Mr. Cook; I thought it was just like the second deed; I would not have executed a deed different from the second deed. * * * I was only paid a consideration one time—for the first deed. The consideration in the first deed was $2.50 or $3.00. That is all I have ever been paid. * * * At the time I signed the deed in 1924, which was the third deed I had signed covering that property, I did not know anything about Mr. Wells having bought this lot, or about his intention to buy this lot. I first learned that Mr. Wells claimed to have bought this lot three or four years after I made the last deed. * * * At the time I executed the third deed, the notary did not fully explain the deed to me. He did not read the deed to me. He said the deed was just like the second deed I had executed. At the time I executed the third deed I did not know that two of the school trustees up there had already conveyed the property to Mr. Wells. * * * I could not read the deed I made to the school district; it wasn't read over to me by anybody; * * * I have told you that when Mr. Cook came to get this last deed from me, he did not tell me that the school district had sold to Mr. Wells. He claimed that the deed was misplaced, and I didn't know that Mr. Wells had bought the land for three or four or five years after that. * * * It has been thirteen or fourteen years since I lived in the Van community. I don't know who Mr. Wells bought from—I don't know whether he ever bought it or not. I never did talk to Mr. Wells about the matter. * * * "

Mr. W. H. Cook, the notary, testified: " * * * I remember having taken acknowl-edgment of deed executed by him (G. W. Swindall) to Van School District; I don't remember what year it was (witness reading instrument) Yes, I recognize this deed; I took the acknowledgment of it. I was called upon by the trustees of the Van School District to do that work. I don't remember whether the instrument was read to him. I don't remember that there was any explanation made to Mr. Swindall with reference to the instrument by me as a notary. I don't recall who signed Mr. Swindall's name to the instrument. I have looked at the deed and Mr. Swindall's name on the deed is not in my handwriting. When Mr. Neill and Mr. White (trustees) and I went down to Pole Town to get this deed, I was acting as a notary public. Yes, the school trustees were the ones who got me to go down there; I was acting for them. * * * Yes, when we went down there, I reckon I did know that they already had a trade up with Mr. Wells to sell him the lot; I don't know, really, when I first knew that. Mr. Swindall signed by making his mark by his name. No, I have no recollection of Mr. Swindall's ever touching the pen that made the 'X.' I don't remember now who made the cross for him. I had known Mr. Swindall a long time, and I knew that he could neither read nor write; I knew that he could not even sign his own name."

Mr. Neill, one of the trustees, testified, among other things, as follows: " * * * I never did see the first and second deeds he executed to the school. I do not know of my own knowledge what those deeds contained. I never made any investigation to determine what was in those deeds. I don't know, of my own knowledge, to whom they were made. I do not know what kind or character of estate was conveyed by those deeds. Yes, at the time of the execution of the 1924 deed, I understood that it was to be in place of, in lieu of and in substitution of the lost deeds. Mr. Swindall did not prepare this deed. Of course I knew that day that Mr. Swindall could not read or write. Why certainly, I knew that he would have to rely upon my statements or upon Mr. Cook's statements, or upon somebody else's statements as to what the deed contained. I don't think there was anybody with Mr. Cook and me when we went to Mr. Swindall's house. * * * As to the name of G. W. Swindall on the deed— I do not know whose handwriting it is in. No, it is not a fact that the name was written in the deed before we went out there. I do not know why we did not obtain the signature, or mark, of Mrs. G. W. Swindall to the deed. I don't know what I did on the day before I went out to Mr. Swindall's house to obtain this deed. I remember signing a deed to Mr. Wells to this same land, but I don't remember the date; it might have been the day before we went to Mr. Swindall's and it might not have been. I am not sure whether, when

we went to sell this property to Mr. Wells, we found for the first time that neither the county nor the school district had any title of record to the property; anyway, we had to get this deed to satisfy Mr. Wells. * * * It might have been the next day that I got Mr. Cook and went to get the deed from Mr. Swindall; I am not sure. Yes, Mr. Swindall executed the deed the same day we were out there. If the other deed is dated previously, it was after we had signed it; I don't remember."

The deed executed by Swindall February 22, 1924, contains this language: "This deed is made in lieu of a deed heretofore executed by me to the above described property, the former deed being lost or misplaced and not being of record, and this conveyance is to have all the force and effect as an original deed. That no part of the above described land is my homestead."

The statement above contains the background for, and the facts immediately connected with, the execution of the instrument in question. Provisions in deeds, in effect the same as the one contained in the deed Swindall testified he executed, have been pronounced conditional limitations, under which the estates conveyed terminated on the happening of the stipulated events. See Wiederanders v. State, 64 Tex. 140; Green v. Gresham, 21 Tex. Civ. App. 601, 53 S. W. 382; McBride v. Farmers etc. (Tex. Civ. App.) 152 S. W. 1135; Stewart v. Blain (Tex. Civ. App.) 159 S. W. 928, 929. If, therefore, the contention of plaintiffs should be established, the right of the school authorities to use or occupy the land ended when they ceased to use it for school purposes, and plaintiffs were then entitled to its possession. We think the evidence clearly raised an issue of fact for the jury, but, as the case will be remanded, we express no opinion as to its probative value, other than to say that it was sufficient to raise an issue as to whether or not Swindall was led by deception to execute the deed, under the belief that it contained the limitation embodied in the preceding deeds.

Defendants contend, however, that, even if the evidence was sufficient to raise this issue, nevertheless the court committed no error in directing the verdict, because it was conclusively shown that they were innocent purchasers; that it conclusively appeared that plaintiffs' alleged cause of action for cancellation was barred under the four years' statute of limitation, and, further, that the asserted cause of action for recovery of the land was barred under the ten years' statute. Defendants present no counter proposition under either of the other grounds of defense alleged.

We assume, for the sake of the discussion, that plaintiffs will ultimately succeed in establishing their contention, that is to say, that fraud in fact was practiced on G. W. Swindall that led to the execution of the deed sought to be canceled; now, in such event, could defendants, who derived title under said deed, claim protection as innocent purchasers? We do not think so.

The doctrine seems to be well settled in this state, as elsewhere, that a contract induced by misrepresentation may be either voidable for fraud or void for mistake. The signing of an instrument by mistake, that is, under the supposition that it was an instrument of another or different character, would be no less a mistake because induced by fraud. Accordingly, if a person is ignorant of the contents of the written instrument, from inability to read, and signs through mistake and misrepresentation, without negligence on his part, such a contract is generally held void for want of assent. 6 R. C. L. 625, 626, sec. 44; Stacy v. Ross, 27 Tex. 3, 84 Am. Dec. 604; Link v. Page, 72 Tex. 596, 10 S. W. 699; Beisert v. Wizig, 103 Tex. 591, 131 S. W. 810; Houston etc. Co. v. Hubbard, 37 Tex. Civ. App. 546, 85 S. W. 474; Steffian v. Bank, 69 Tex. 518, 6 S. W. 823; El Dorado v. Darnell, 135 Iowa, 555, 113 N. W. 344, 124 Am. St. Rep. 309.

The case of Stacy v. Ross, 27 Tex. 3, 84 Am. Dec. 604, supra, was a suit on a promissory note, in which fraud in its execution was pleaded as a defense, in that the note, as read to the maker, an illiterate man, was to bear 5 per cent. interest, whereas the note actually signed and sued upon bore 8 per cent. interest. The court held the note void, because the maker, by reason of the fraud perpetrated, had not assented to its execution. The case of Link v. Page, 72 Tex. 596, 10 S. W. 699, 701, involved a transaction in which the grantor was led by fraud to execute a deed different from the one intended. Commenting upon these facts, the Supreme Court, in an opinion by Judge Gaines, said: "The attorney of the grantors never having assented to the contract set forth in the alleged conveyance, signed by him through mistake on his part and fraud on part of his grantee, the minds of the parties did not meet, and no agreement was consummated"—citing Stacy v. Ross, 27 Tex. 4, 84 Am. Dec. 604; Van Valkenburgh v. Rouk, 12 Johns. (N. Y.) 337; Bish on Cont. (2d Ed.) §§ 345-6 et seq.; Pollock's Prin. Cont. 401 et seq. It follows therefore that, if plaintiffs should sustain their contention, the deed executed February 22, 1924, must be held void for want of assent on the part of the grantor, and defendants who hold thereunder could not claim protection as innocent purchasers under the void instrument.

Was plaintiffs' cause of action for cancellation barred by the statute of four years' limitation (article 5529, R. S. 1925)? It is obvious that more than four years elapsed after the execution of the deed (February 22,

1924), before plaintiffs instituted the suit, but the evidence raised the issue that the suit was instituted less than four years after plaintiffs knew, or, by the exercise of ordinary diligence, could have known of the alleged fraud.

■ The doctrine is well settled that the statute of limitation will not begin to run in cases involving fraud, until it is discovered, or, by the use of reasonable diligence, could have been discovered. See Kuhlman v. Baker, 50 Tex. 636, 637; Alston v. Richardson, 51 Tex. 6; Cooper v. Lee, 75 Tex. 114, 12 S. W. 483; Bass v. James, 83 Tex. 111, 18 S. W. 336.

■ The record is somewhat confusing as to the date the suit was instituted; at page 43 of the statement of facts, there is a recitation that it was filed March 22, 1930, while at page 80 there is another that it was filed March 26, 1929, and that a lis pendens notice of the suit was filed. We do not regard this conflict of any materiality; however, conclude from data found elsewhere in the record that the suit was instituted March 22, 1930; but, under either aspect, the question as to when the cause of action for cancellation accrued was one of fact and should have been submitted to the jury.

The other question presented is this: Was plaintiffs' cause of action for title and possession of the land barred by the ten years' statute (article 5510, R. S. 1925) when the suit was instituted? As before stated, plaintiffs sought by the suit to accomplish a twofold purpose, that is, cancellation of instruments and the recovery of land. While the action is not, strictly speaking, one of trespass to try title, yet it has that legal effect. See Dangerfield v. Paschal, 20 Tex. 536; Grimes v. Hobson, 46 Tex. 416; The Day etc. Co. v. State, 68 Tex. 526, 535, 4 S. W. 865. However, recovery of the land is dependent altogether upon the result of the equitable proceedings for cancellation, for, if plaintiffs fail to obtain that relief, they will fail altogether. See McCampbell v. Durst, 15 Tex. Civ. App. 522, 40 S. W. 315, 320; Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025, 1031.

In McCampbell v. Durst, supra, Judge Williams used the following language in point: "If the plaintiff in such an action shows right to a decree which, when rendered, would invest him with title sufficient to maintain an action for the land, he may doubtless, aside from questions of venue and other questions of mere procedure, obtain both the affirmative decree and judgment for the land in one action. But the judgment for the land would be the consequence, merely, of the relief primarily granted, and could not, but for that relief, be recovered. And hence it is obvious that the question, whether or not that primary relief should be granted, is to be first determined by the same rules which would govern if the suit were for it alone."

In view of this status of the law, it is not altogether clear that limitation under the ten years' statute was an appropriate defense, but we leave this point undecided, because it appears indisputably that plaintiff's cause of action was not barred under said statute, even if applicable and in operation prior to the institution of the suit.

■ We will state our reasons for this conclusion. If it be conceded that, after the land was deeded to Wells, February 21, 1924, his possession was peaceable and adverse, yet the time was insufficient to complete the bar prior to the suit; therefore, in order to complete ten years' possession, he would have to tack his to the prior possession of the school authorities; but before theirs could have become hostile to plaintiffs (under his theory of the case) the school authorities should have repudiated the title held under the deed executed by him and visited upon him notice, actual or constructive, of the repudiation before the statute would have been put in operation. We do not think it can be correctly said, as a matter of law, that this was shown. Thompson v. Richardson (Tex. Com. App.) 221 S. W. 952, 953; Word v. Drouthett, 44 Tex. 365, 371.

■ But even if it be conceded that the school authorities had maintained peaceable and adverse possession of the land prior to February 22, 1924, the day the deed in question was executed, yet, by soliciting and inducing Swindall to execute the deed, they recognized his ownership of the property, the continuity of adverse possession, if it had existed, was thereby broken, and the running of the statute interrupted. See 2 C. J. 101, 102, 103, 136; Satterwhite v. Rosser, 61 Tex. 166, 172; Robinson v. Bazoon, 79 Tex. 524, 15 S. W. 585; Burrell v. Adams, 104 Tex. 183, 187, 135 S. W. 1156; Thompson v. Richardson (Tex. Com. App.) 221 S. W. 952; Black v. Goolsbee (Tex. Civ. App.) 226 S. W. 463; Collins v. Megason (Tex. Civ. App.) 228 S. W. 583, 585; Smith v. Wood (Tex. Civ. App.) 229 S. W. 583, 585.

Therefore, if, on a subsequent trial, the facts developed are in legal effect the same as disclosed by the record before us, the court should instruct a verdict on this issue for plaintiffs.

For reasons stated, we believe the court erred in directing a verdict for defendant.

Its judgment is therefore reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

## On Motion for Rehearing.

Appellees earnestly insist that our decision is, not only erroneous, but in conflict with a number of Texas cases. We held that the evidence raised an issue of fraud, that is, that Swindall, without negligence on his part, was led by deception to convey in fee simple

the acre of land to the school authorities under the belief that the conveyance was upon a conditional limitation; therefore we concluded, as a matter of law, that the deed executed under such circumstances was void, because never assented to by the grantor; hence appellees, claimants under the void instrument, could not claim protection as innocent purchasers.

The authorities from this state, cited in our original opinion, sustain the proposition that an instrument executed under such circumstances is, not merely voidable, but absolutely void. This doctrine is also announced in Williston on Contracts, vol. 3, § 1488, page 2648, in the following language: "Fraud may induce a person to assent to do something which he would not otherwise have done, or it may induce him to believe that the act which he does is something other than it actually is. In the first case, the act of the defrauded person is effectual, though voidable; in the second case, the act of the defrauded person is void." To the same effect, see Delvin vol. 2, § 726; Biddeford National Bank v. Hill, 102 Me. 346, 66 A. 721, 120 Am. St. Rep. 499; Chickasaw L. & T. Co. v. Mills, 59 Okl. 230, 158 P. 1156; Horvath v. National Mortgage Co., 238 Mich. 354, 213 N. W. 202, 56 A. L. R. 578; Oatman v. Hampton, 43 Idaho, 675, 256 P. 529; McGinn v. Tobey, 62 Mich. 252, 28 N. W. 818, 4 Am. St. Rep. 848; Whipple v. Brown Bros. Co., 225 N. Y. 237, 121 N. E. 748; Smith v. Ryan, 191 N. Y. 452, 84 N. E. 402, 19 L. R. A. (N. S.) 461, 123 Am. St. Rep. 609, 14 Ann. Cas. 505.

The authorities, from this and other states, fully sustain the proposition that an instrument, the execution of which is induced by fraudulently representing its contents to be other than it actually is, stands on no higher ground than a forgery and is therefore void.

Any number of cases may be found, involving instruments induced by fraud relating to the consideration that were held simply voidable, and that parties holding thereunder, if innocent purchasers, could successfully defend on that ground. There can be no debate at this point, but an instrument executed under circumstances that we believe the evidence tends to show Swindall executed the instrument in question could not have attained the status of a contract, because never assented to, and being void would possess no greater value in law than a mere forgery.

After carefully examining all cases cited by appellees in briefs, as well as in motions for rehearing, we fail to find where the identical question under consideration was either discussed or decided. The nearest approach to the question is found in Ramirez v. Bell (Tex. Civ. App.) 298 S. W. 924, 927. Ramirez and wife sued Bell and Wendlandt to cancel a deed executed by them, conveying to Bell their homestead, consisting of 121 acres of land in Bastrop county, and to cancel a deed of trust placed on the land by Bell to secure Wendlandt in the payment of a loan of $5,000. Plaintiffs contended that their signatures were obtained to the deed under the belief induced by Bell's representations that it was a mortgage, thus an issue as to the genuineness of the instrument as their act was made, in other words, that the deed was in law a forgery, and that the facts and circumstances put Wendlandt upon notice. Bell contended that the deed evidenced a conditional sale, and Wendlandt contended that he made the loan believing Bell to be the owner and was without knowledge or notice to the contrary. The court found that the deed to Bell was in fact a mortgage, that the evidence raised the issue of notice to Wendlandt and remanded the case for trial on that issue. The nearest approach to a discussion of the proposition involved here is found in the following statement, the court said: "The second contention that the deed was a forgery, and therefore void, if procured by representation that it was only a mortgage, is overruled." After making this statement, the court proceeded to discuss forgery as it existed at common law and as it exists under our penal code, and disposed of this phase of the case by holding that the deed was not a forgery, but in fact a mortgage, that the circumstances raised the issue of notice to Wendlandt, and reversed and remanded the case for trial on that issue alone.

The evidence furnished ample basis for the proposition involved here, that is, that the instrument was void because its terms were never assented to by the grantors, but it seems they rested their contention on the proposition that the instrument was void because a forgery, and this being the proposition urged was the question decided.

Appellees insist that Swindall was negligent in executing the instrument; that, if due care had been exercised, he could have ascertained the nature of the instrument before signing; that appellees were thereby misled to their injury. Therefore plaintiffs are estopped to assert the invalidity of the deed. This contention embodies a correct principle, and on trial the jury may find that Swindall was in fact negligent, but this also presents a question for the determination of the jury under a proper definition, and submission of the issue.

Appellees insist that we erred in finding that the suit was instituted March 26, 1929, instead of March 22, 1930, and we are asked to correct the finding.

At page 43 of the statement of facts, we find the following agreement: "It is agreed by all parties to this suit that the original petition in this case was filed on the 22nd day of March, 1930; whereas, at page 80 of the statement of facts, we find the following:

'Agreement: It is agreed between all parties to this suit that after the filing of this suit on March 26, 1929, the plaintiff filed notice of lis pendens now of record with the county clerk of Van Zandt County, Texas, fully setting out the nature and character of this suit.'" Appellants contend in their brief that the suit was instituted March 26, 1929, whilst appellees contend in their brief that the correct date is the 22d day of March, 1930. These entries are of equal dignity, but irreconcilable. We think it inexcusable that a record containing contradictory agreements to the same fact should have been presented to an appellate court, or circumscribed by the record as we are that the court should have been called upon to settle the controversy in regard to a date so certain and easy of ascertainment as not to admit of real controversy. We have had no way of determining the matter, except by indulging a presumption, or by ransacking the record for corroborative evidence. The fact in issue, that is, the date of the institution of the suit, is only material on the question of limitation, and, as the burden of that issue is upon appellees, we could have dismissed the matter by indulging the presumption that the earlier date, the one most favorable to appellants, is the correct one; however, we have not done so, but, by diligent search, find hidden away in a citation copied in the transcript a recitation, to the effect that the suit was instituted on March 22, 1930; hence find that the contention of appellees is corroborated and the original opinion has been corrected accordingly. In view, however, of the uncertainty caused by these contradictory entries and contentions, this finding is for this hearing only, and will not conclude either party on a retrial of the cause.

After carefully considering all grounds urged by appellees for rehearing, and finding no reason to change our decision, the motions are overruled.

Overruled.